## UNITED STATES

v.

**Senior Airman Wilbert O. SIMMONS, FR 497–66–1458, United States Air Force.**

**ACM 26345.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 June 1987.

Decided 6 May 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi, Captain Laurence M.

Soybel and Captain John V. Sullivan, USAFR.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Lieutenant Colonel Morris A. Tanner, Jr. and Lieutenant Colonel Robert J. Webster, USAFR.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.

## DECISION

HOLTE, Judge:

Consistent with his pleas the appellant was found not guilty of one charge of wrongfully possessing cocaine with intent to distribute and one charge of wrongfully possessing drug abuse paraphernalia in violation of a lawful general regulation. Contrary to his pleas he was convicted of one charge of wrongful use of marijuana and one charge of wrongful use of cocaine. The bases for the two charges of which the appellant stands convicted were positive urinalysis tests. He was sentenced to a bad conduct discharge, confinement for nine months, forfeiture of $300.00 per month for nine months, and reduction to the grade of airman basic. The sentence was approved.

On the night of 28 October 1986, the appellant and a male civilian companion were apprehended by the District of Columbia police for suspicious conduct while seated in a parked car in a high drug traffic area. After his companion had been removed from the passenger side of the car an amount of cocaine was found on the seat. Subsequent search of the automobile revealed drug abuse paraphernalia.

Early in the morning of 29 October 1986, Chief Master Sergeant Ray Johnson, the appellant's first sergeant, received a telephone call informing him that the appellant had been arrested and would be arraigned that morning. Chief Johnson called appellant's supervisor with instructions to go to court in the morning as an observer and have the appellant report to him when he returned to the base.

At mid-morning on 29 October 1986, the appellant arrived, unescorted, at Chief Johnson's office. There, in what was described as an informal, relaxed atmosphere, the two discussed what had transpired the previous evening. Throughout the discussion the appellant declared his innocence, maintaining that it was just a situation of being in the wrong place at the wrong time. Chief Johnson informed the appellant that it was required that he file a report with higher headquarters about the incident because it involved an apprehension by civilian authorities. Appellant was further informed that a urinalysis test would be necessary because one of the questions he had to answer in the report was what type of urinalysis test had been accomplished since it was a drug related incident. The appellant was told that he could either consent to the urinalysis test or it would be a commander directed test. The appellant knew from past experiences that he could be ordered to submit to a urinalysis, and he understood the conversation that he and Chief Johnson were having. Because of his previous dealings with the appellant, Chief Johnson believed him when he denied doing anything wrong. As a result, the Chief suggested that he might want to consider consenting to the test. Chief Johnson gave appellant a locally created consent form, which the appellant read over, had no questions about, and then signed. The appellant was then directed to go to the hospital for the test. He took the signed consent forms and departed for the hospital, without escort, where the test was conducted.

The assigned error before this court is that the consent given by the appellant for a urinalysis drug test did not constitute a valid waiver of Fourth Amendment rights. We disagree.

In deciding this issue we see no need to deviate from, nor expand on, the teachings of existing case law. One common thread throughout these cases is that none of them turned on the presence or absence of a single criterion; each reflected a careful scrutiny of all the surrounding circumstances. Another common thread is that in deciding whether the consent for search

was valid the government need only establish that such consent was freely and voluntarily given.

In *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the United States Supreme Court, in addressing the waiver of Constitutional rights, said that a waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of such right depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. In *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 1797 (1968), the Court held that when the government relies on consent to justify the lawfulness of a search, they have the burden of proving that the consent was, in fact, freely and voluntarily given. In *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the issue before the United States Supreme Court was what must the government prove to demonstrate that consent for a search was voluntarily given. In the final analysis, the Court held that when the subject of a search is not in custody it need only be proven that the consent was voluntary and not the result of duress or coercion, express or implied. The Court went on to say that voluntariness is a question to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is not required as a prerequisite to establish voluntariness, it is a factor to be taken into consideration.

The case law in military jurisprudence and Mil.R.Evid. 314 are consistent with the above cited cases. In *United States v. Mota Aros,* 8 M.J. 121 (C.M.A.1979), it was held that in order for Fourth Amendment rights to be waived by consent to search, the government is required to demonstrate that such consent reflects an uncoerced election to grant the license to search. *United States v. Middleton,* 10 M.J. 123 (C.M.A.1981), teaches us that for the government successfully to carry its burden of proving that consent to search was freely and voluntarily given, it had to show that there is more than mere acquiescence to claim of authority.

■ In determining the voluntariness of the consent we must evaluate the totality of the circumstances involved in which the appellant gave his consent for the urinalyses test, and such determination is a question of fact. *United States v. Wallace,* 11 M.J. 445 (C.M.A.1981). The appellant is a twenty seven year old high school graduate whose military test scores are average. He has over eight years military experience. In January of 1980 he received nonjudicial punishment for possession of marijuana and had participated in other urinalyses which made him knowledgeable of the fact that involuntary testing could occur.

■ During the appellant's meeting with Chief Johnson, he was not in custody and the meeting was conducted in a friendly, congenial atmosphere. The first sergeant informed the appellant that if he did not consent to the test a commander directed test would be ordered. There is no doubt that had it come to that, there were sufficient known facts upon which to order such urinalysis, or, for that matter, sufficient probable cause existed to justify a search warrant urinalysis. The appellant was in no way misled in the discussion relating to urinalysis testing, which distinguishes the *sub judice* from our holding in *United States v. Pellman,* 24 M.J. 672 (A.F.C.M.R. 1987). We conclude from *United States v. Nicholson,* 1 M.J. 616 (A.C.M.R.1975), that it is not coercive or threatening to inform an individual that if consent is refused, a commander directed urinalysis will be ordered, provided of course, that the commander has a justified reasonable suspicion of drug involvement. The purpose for which the urinalysis was needed is another factor which must be considered in determining whether the consent was voluntary. The appellant denied any wrongdoing and because of past knowledge of the appellant, the first sergeant had no reason to disbelieve the denial. However, such test was required to prepare a proper and com-

plete response to higher headquarters necessitated by the incident.

The appellant argues that the locally produced consent form upon which he gave his consent in writing makes such consent invalid because the utilized form does not go into lengthy detail as to the exact rights that he was waiving by giving such consent. We disagree. This form contained the following acknowledgements by the appellant:

(1) I, WILBERT ORLANDO SIMMONS [printed in the appellant's handwriting], hereby volunteer to provide a urine specimen for use in drug urinalysis; (2) I understand that at this time I am not required to provide this specimen, but I choose to do so, voluntarily and of my own free will; (3) No one has coerced me or improperly influenced me to obtain my consent, and I carefully considered this matter before giving my consent; (4) No promises of any reward or benefit have been made to me to encourage me to consent; (5) I have not been ordered to provide this specimen for urinalysis.

The form was signed by the appellant and properly witnessed. The appellant further argues that the form was deficient in that it did not advise him that he had a right to be informed, prior to giving consent, that any evidence obtained from such search could be used against him in a trial by court-martial. Again we disagree, and hold that the law as set forth by this court in *United States v. White,* 24 M.J. 923 (A.F.C.M.R.1987), *pet. granted,* 26 M.J. 53 (C.M.A. 1988) is controlling. The single right given an individual under the Fourth Amendment, relating to consent searches, is the right to refuse to give consent. We base this on our interpretation of the Fourth Amendment which requires only that it be established by the government that the consent search be freely and voluntarily given. *See generally, Schneckloth v. Bustamonte, supra,* for an excellent discussion on this issue.

Considering the totality of the circumstances in this case, the judge's ruling that the urinalysis test was consensual, freely and voluntarily given and not due to coercion or mere submission to authority is fully supported by the evidence. The findings of guilty and the sentence are

AFFIRMED.

Chief Judge HODGSON and Senior Judge FORAY concur.