UNITED STATES, Appellee,

v.

Tony L. TURNER, Staff Sergeant U.S. Air Force, Appellant.

No. 61,362.
ACM 26873.

U.S. Court of Military Appeals.

Sept. 8, 1989.

For Appellant: *Major Lynne H. Wetzell* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Captain Joseph V. Treanor, III* (argued); *Colonel Joe R. Lamport, Lieutenant Colonel Robert G. Giovagnoni, Major Jeffrey H. Curtis* (on brief); *Major Kathryn I. Taylor.*

*Opinion of the Court*
EVERETT, Chief Judge:

I

On November 10, 1987, and January 14–15, 1988, appellant was tried at McGuire Air Force Base, New Jersey, by a general court-martial composed of officers. Contrary to his pleas, he was found guilty of wrongfully using cocaine between April 7 and May 7, 1987, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a, and was sentenced to a bad-conduct discharge, confinement for 7 months, total forfeitures, and reduction to paygrade E-1. After the convening authority approved the sentence, the Court of Military Review affirmed in an unpublished per curiam opinion on October 26, 1988.

The issue on which we granted review [1] was raised by a defense motion at trial to disqualify trial counsel and assistant trial counsel. The basis for this motion was a

---

1. The issue granted was:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT, BY FAILING TO RECUSE THE TRIAL COUNSEL AND ASSISTANT TRIAL COUNSEL DUE TO TRIAL COUNSEL'S INADVERTENT PRE-TRIAL CONVERSATION WITH THE DEFENSE EXPERT CONSULTANT.

telephone conversation that trial counsel had before trial with Major Jeffrey Anders Gere, an Army forensic toxicologist, who had been assigned to provide expert assistance to the defense. At the time of this conversation, trial counsel, who was from a different circuit, had been unaware that Major Gere was to be a consultant and had believed that he was only to testify as an expert witness for the defense. On this premise, trial counsel assumed that, in preparing his own case, he could properly speak with Gere.

At the time of the conversation, Major Gere had not talked with the accused or discussed any details of the case with defense counsel. He had, however, received from the defense a litigation packet containing reports on the results of urinalyses performed on Turner. All of the documents in the litigation packet were already available to the prosecution.

The telephone conversation between trial counsel and Major Gere provided no information to the prosecution concerning planned defense strategy at trial, and it did not lead the Government to subpoena any additional witnesses or physical evidence. The defense was unable to show any specific prejudice. Defense counsel claimed, however, that this conversation was *per se* prejudicial to the defense and moved that trial counsel and his assistant should be disqualified in order to preclude any possibility that the Government might receive any unwarranted benefit. Judge Snyder, who heard the motion, made detailed findings of fact (*see* Appendix) and denied the motion. In light of his findings, we affirm.

## II

Frequently, the results of a trial will hinge on expert testimony. Indeed, Professor Paul Rothstein, a renowned expert on the law of evidence, has described some trials as "star wars,"[2] because the fact-finder's decision will probably hinge on which expert is perceived to be the brighter

"star" of the trial. In a trial where, as here, the Government relies chiefly on a positive urinalysis, access to an expert is especially vital. *See United States v. Van Horn*, 26 MJ 434, 439 (CMA 1988) (Everett, C.J., concurring).

To assure that indigent defendants will not be at a disadvantage in trials where expert testimony is central to the outcome, the Supreme Court has ruled that a defendant must be furnished expert assistance in preparing his defense. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). For trials by court-martial the same requirement could be inferred from Article 46, Uniform Code of Military Justice, 10 USC § 846, even if it were not constitutionally mandated by *Ake*. *Cf. United States v. Garries*, 22 MJ 288, 293 (CMA), *cert. denied*, 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986).

An expert may be of assistance to the defense in two ways. The first is as a witness to testify at trial. When serving in this capacity, he properly may be interviewed by the prosecutor. Indeed, even if the defense expert is a physician, he is subject to pretrial interview by trial counsel, because the Military Rules of Evidence recognize no categorical physician-patient privilege. *See* Mil.R.Evid. 501(d), Manual for Courts–Martial, United States, 1984; *United States v. Toledo*, 25 MJ 270, 275 (CMA 1987).

An expert also may be of assistance to the defense as a consultant to advise the accused and his counsel as to the strength of the government case and suggest questions to be asked of prosecution witnesses, evidence to be offered by the defense, and arguments to be made. In performing this function, the expert often will receive confidential communications from the accused and his counsel; and he may have occasion to learn about the tactics the defense plans to employ. If the expert consultant were free to disclose such information to the prosecutor prior to trial, a defense counsel

---

**2.** "Developments Under Rules of Evidence," Address to Twelfth Annual Homer Ferguson Conference, May 28, 1987.

would be placed at a great disadvantage; and, indeed, he might hesitate to consult with the expert. The result would be impairment of the accused's right to counsel, because his attorney would be inhibited in the performance of his duties and unable fully to utilize the assistance contemplated by *Ake.*

With such considerations in mind, Mil.R. Evid. 502, which recognizes the lawyer-client privilege, states:

(a) *General rule of privilege.* A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) *between the client or the client's representative and the lawyer or the lawyer's representative,* (2) *between the lawyer and the lawyer's representative,* (3) by the client or the client's lawyer to a lawyer representing another in a matter of common interest, (4) between representatives of the client *or between the client and a representative of the client,* or (5) between lawyers representing the client.

(Emphasis to text added). Under the definition in Mil.R.Evid. 502(b)(3):

A "representative" of a lawyer is a person employed by or assigned to assist a lawyer in providing professional legal services.

■ Major Gere had been assigned to consult with the defense in preparation for trial and to be present with counsel to advise him during the trial—especially with respect to expert testimony being offered by government witnesses. In our view, he was "the lawyer's representative" for purposes of Mil.R.Evid. 502(a). *Cf. United States v. Toledo, supra.* Therefore, the prosecutor was not free to interview him.[3]

Trial counsel's telephone conversation with Major Gere violated Mil.R.Evid. 502 and constituted legal error. Indeed, when he learned that Major Gere was only to be an expert consultant at trial—rather than a witness—trial counsel himself recognized that he had erred by talking to this expert without informing, or obtaining any clearance from, defense counsel. The Court of Military Review made clear that it too considered the pretrial conversation to have violated Mil.R.Evid. 502; and we do not interpret the military judge's detailed findings to constitute approval of the conversation.

Disclosure to a prosecutor of privileged information sometimes is considered harmless error under Article 59(a) of the Uniform Code, 10 USC § 859(a). *United States v. Bledsoe,* 19 MJ 641, 645 (AFCMR 1984), *aff'd,* 26 MJ 97, 103 (CMA), *cert. denied,* ── U.S. ──, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988). We recognize, however, that in this case the defense contends that trial counsel's interview of Major Gere constituted constitutional error, because it related to Turner's right to the assistance of counsel. Even if we assume *arguendo* that constitutional error was committed, this does not necessarily require reversal of the conviction. *United States v. Remai,* 19 MJ 229 (CMA 1985); *see Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The Supreme Court has been concerned to assure that a defense counsel is not prevented from functioning effectively. *See, e.g., Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972). Nonetheless, the Sixth–Amendment right to counsel is not a talisman whose invocation invariably results in reversal. For example, in *Strickland v. Washington,* 466 U.S. 668, 104

3. If defense counsel also planned to use Major Gere as a witness, trial counsel could properly have interviewed him as to the matters about which he would testify. However, in that event, the expert witness should have been advised carefully that he could not reveal any discussions with the accused or with defense counsel, or impart information to trial counsel which was not already available to him. Moreover, defense counsel could properly have insisted on being present during the interview of his own expert witness in order to assure that trial counsel did not stray into forbidden territory.

S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court established a test whereunder a defendant must show not only that the assistance that he received from counsel was below professional standards but also that, apart from his counsel's errors, there is some reason to believe the outcome would have been different.

■ Whatever test we employ as to the error committed by trial counsel, we are convinced from the military judge's findings and our own review of the record that there is no reason to set aside this conviction. The Government gained no advantage from the prosecutor's telephone conversation with Major Gere, and there was no bad faith on the Government's part. If the two prosecutors had been disqualified, as the defense demanded, we see no reason to believe that their replacements would have tried the case differently or that the outcome would have been different.[4] Nothing in this record undermines our confidence in the proceedings, cf. Strickland v. Washington, supra, or induces any reasonable doubt that the result would have been the same had the error not been committed, cf. Chapman v. California, supra.[5] Accordingly, we perceive no basis for vacating the conviction.

### III

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.

### APPENDIX

### IN THE USAF TRIAL JUDICIARY

### FIRST CIRCUIT

United States

v.

SSgt Tony L. Turner

4. Obviously, we assume that the substitute prosecutors would have been lawyers of comparable professional competence.

5. We do not decide whether, under the circumstances here, the test of constitutional error in United States v. Remai, 19 MJ 229 (CMA 1985), should be applied or instead the less demanding test of harmless error under Article 59(a), Uniform Code of Military Justice, 10 USC § 859(a). Whatever test is applied, the error was not prejudicial to this appellant.

FR500–72–5334

Clinic McGuire

McGuire Air Force Base, N.J.

### ESSENTIAL FINDINGS

With regard to the defense request that Trial and Assistant Trial counsel be recused because of a breach of the attorney-client privilege, the following findings are hereby entered.

### FINDINGS OF FACT

1. The detailed defense counsel submitted a written request to the convening authority on 10 Nov 87 asking that Dr. John Whiting be employed at government expense to assist in both preparation and presentation of the defense case (Appellate exhibit I).

2. Because he anticipated Dr. Whiting being used as a defense expert witness, the 438 ABG Staff Judge Advocate recommended in writing to the convening authority that the defense request be approved (Appellate exhibit II). On 19 Nov 87, the convening authority denied the defense request for Dr. Whiting in writing (Appellate exhibit III).

3. In the 19 Nov 87 letter the convening authority advised defense counsel of several military toxicologists who could be consulted in preparation of the defense case. One of the names mentioned was Major Jeffrey Gere, misspelled in the letter as Major Jaffrey Gene.

4. Major Gere had been made available to the defense as a defense consultant in the case of US v. Townsend, which convened at McGuire AFB, NJ on or about 30 November 1987. Captain Lamondola was detailed counsel on the Townsend case. While acting in that capacity, he mentioned to Maj Gere that there may be a request

forthcoming for his assistance on the *Turner* case. Captain Lamondola may have mentioned to Maj Gere the issue of the "ion ratio" being changed from "unsatisfactory" to "satisfactory" in the laboratory report of the instant case, but Maj Gere has no recall of this being discussed.

5. A5 the time of the conversation noted above, Maj Gere had been made available to the defense solely for the case of *US v. Townsend.* At some time between December 1987 and January 1988, however, the Deputy SJA, 21AF, orally informed Captain Lamondola that Maj Gere was being made available to the defense team as an expert consultant, and all that was needed was a fund cite for Maj Gere's travel.

6. Having been so assigned, the attorney-client privilege attached to Maj Gere with regard to confidential communications.

7. In the interim, Capt Jeremy Fellows was detailed as Trial Counsel on this case from the Fifth Judicial Circuit at Travis Air Force Base, California, on about 7 Jan 88. Capt Fellows had no involvement in the case whatsoever before his arrival at McGuire AFB, N.J., on 10 Jan 88.

8. On 11 Jan 88, the defense submitted a letter to the convening authority requesting that a fund cite be provided for Major Gere to travel to the place of trial as the defense expert consultant (Appellate exhibit III). In reviewing the trial related documents, trial counsel failed to note the request for a fund cite. Trial counsel also failed to grasp the specifics of Maj Gere's role during a 9 January 1988 telephone call with Captain Lamondola.

9. Consequently, Capt Fellows contacted Major Gere by telephone during the day on 11 Jan 88. Prior to calling Maj Gere, trial counsel made no inquiry of the convening authority's staff judge advocate's office, notwithstanding his uncertainty regarding Maj Gere's status.

10. Because Maj Gere was not fully informed of his status on the case, he was unable to clearly articulate his status to Captain Fellows when he inquired of Maj Gere's role in the upcoming case of *US v. Turner.* Further, prior to this issue arising, Maj Gere was not aware of the distinction between a consultant and an expert witness. Consequently, a 15 to 20 minute telephone conversation ensued regarding the case.

11. Capt Fellows asked Major Gere if he had reviewed the litigation packages which pertained to the testing of the sample at issue in the case and was told that he had. Maj Gere and Captain Fellows then discussed the tests performed at the government laboratories as well as the test the accused caused to be performed at a non-DOD connected laboratory, Damon Laboratory. The Damon report had already been released pursuant to discovery request, and Captain Fellows was already familiar with the contents thereof.

12. Trial counsel inquired into the internal controls exercised by the laboratories in question, the number of tests performed on urine sample(s) submitted by the accused, and the issue of the ion ratio used during the GCMS. Because the issue of the ion ratio was patent on the face of the government laboratory's report, Trial counsel had formed a mental impression and explanation of the ion ratio issue prior to contacting Maj Gere.

13. Maj Gere informed trial counsel that he would personally have preferred more hand-to-hand chain of custody. He also told trial counsel that the negative results of the test performed by the independent laboratory were not necessarily inconsistent with the positive results of the tests performed by the DOD connected laboratories, and that both could be correct.

14. Captain Fellows at no time inquired of Maj Gere as to any conversations Maj Gere may have had with any defense counsel or the accused.

15. The information Maj Gere provided Captain Fellows was based on his review of the litigation packages submitted by the laboratories in question and telephone conversations he had with those same laboratories.

16. Prior to his conversation with Captain Fellows, Maj Gere had not had any specific

conversations with either defense counsel or the accused. When provided the laboratory packages by Captain Lamondola, Maj Gere was not asked by Captain Lamondola to direct his attention to any particular part of the packages or issues. Prior to his conversation with Captain Fellows, Maj Gere was never privy, or made privy, to any tactical discussions of defense counsel. Defense counsel never disclosed any client communications to Maj Gere until after his discussion with Captain Fellows.

17. Maj Gere believes he could have provided Captain Fellows with the same information he provided even had he not had prior contact with defense counsel.

18. Maj Gere does not believe he has compromised the defense's case in any manner. He did not say anything to Captain Fellows that he said to Captain Lamondola. He does not view the ion ration issue as critical because he believes the government's witness (Dr. Foltz) will have a logical explanation for it. He knows Dr. Foltz personally and is familiar with his work.

19. Trial counsel has not obtained any additional witnesses as a result of his conversation with Maj Gere. Neither did trial counsel seek additional documents as a result of the conversation.

20. The state or posture of the Government's case did not change as a result of Captain Fellows' conversation with Major Gere. The areas discussed by them were purely technical or scientific in nature, and were areas which could not be changed or corrected prior to trial (except, of course, a retesting to "correct" the ion ratio). Trial counsel did not gain "new knowledge" as a result of his conversation with Maj Gere.

21. Trial counsel's actions were not in bad faith.

22. As stated above, no client or other type confidential communications had been disclosed to Maj Gere by defense counsel at the time of his conversation with Captain Fellows. Thus, no confidential communications of any kind were divulged by Maj Gere to Captain Fellows.

23. There has been no breach of the attorney-client privilege.