**UNITED STATES**

v.

**Staff Sergeant Cathleen L. MURPHY, FR 476–76–3060, United States Air Force.**

**ACM 27422.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 20 July 1988.

Decided 27 Sept. 1989.

574

Appellate Counsel for the Appellant: Mr. John J.C. O'Shea, Lubbock, Texas; Colonel Richard F. O'Hair and Major Frank J. Spinner.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Terry M. Petrie and Captain David G. Nix.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

Following a heavily-litigated trial which the prosecution called a "war of attrition," appellant Staff Sergeant Murphy was found guilty by a general court-martial consisting of members of wrongful use of cocaine, a violation of Article 112a, UCMJ, 10 U.S.C. § 912a. A significant portion of the prosecution's evidence consisted of the results of a positive urinalysis indicating the presence of cocaine in the appellant's urine. Her sentence is a bad conduct dis-

charge, two years of confinement, and reduction to airman basic. Before us, she raises four matters for our consideration.

### Adequate Notice Under R.C.M. 701

The appellant first argues that the military judge erred by failing to suppress the testimony of a government rebuttal witness after the prosecution failed to follow the dictates of R.C.M. 701. That witness, Ms. Tonya Brooks, testified, over defense objection, as an accomplice and the sole eyewitness to the cocaine offense charged.

We disagree and find the recent decision of *United States v. Trimper*, 28 M.J. 460 (C.M.A.1989) dispositive. The defense insisted at trial that Brooks' name should have been revealed in response to the defense's routine disclosure request—or at least made known after the defense moved that the Government particularize the specific location at which the accused supposedly ingested cocaine. After Brooks testified, the military judge permitted the defense a continuance from the close of court the afternoon of 18 July until the afternoon of 19 July; the defense succeeded in ferreting out both a witness who testified that Ms. Brooks had bad character and proof of a Texas conviction for driving while intoxicated.

■ Following the guidance of *Trimper*, we hold that the prosecutor should have foreseen the likely relevance of this witness's testimony and disclosed it. *See* R.C.M. 701(a)(3) and 701(d) and *United States v. Callara*, 21 M.J. 259, 263 (C.M.A. 1986). Though we follow the reasoning of the Court of Military Appeals in *Trimper* and *Callara* that failure to disclose was error, we find—as did the Court of Military Appeals in those two cases—that excluding the testimony of the witness was unnecessary to cure the dilemma. The military judge was free to fashion other remedies. Here, she did so by granting a continuance. *See* R.C.M. 701(g)(3).

One could argue that *Trimper* is distinguishable in that the evidence there involved *uncharged* drug use which rebutted Captain Trimper's assertions of innocence; in the present factual pattern, the testimony of Ms. Brooks went directly to prove the offense charged and was admissible in the government's case-in-chief. We view this distinction as offering no consolation to the appellant. In sum, we find no error.

### The Consent Search

■ The appellant also argues that the military judge committed prejudicial error when she failed to suppress incriminating statements made by the appellant as well as the results of a urinalysis subsequently obtained "without the appellant's voluntary consent." We believe the appellant's assertion of error mixes Fourth Amendment oranges with Fifth Amendment apples. The key to unravelling the matter is not whether an Article 31, 10 U.S.C. § 831, warning was needed but, under the Fourth Amendment, *whether the consent was voluntary.* *See* Mil.R.Evid. 314(e)(4); *United States v. Roa*, 24 M.J. 297 (C.M.A.1987); *United States v. Simmons*, 26 M.J. 666 (A.F.C.M. R.1988). *See also* Saltzburg, Schinasi & Schlueter, *Military Rules of Evidence Manual* 254–255 (2d ed. 1986) and LaFave, *Search and Seizure*, 214–217 (2d ed. 1987). The trial judge's conclusion of voluntary consent will not be disturbed unless unsupported by the evidence of record or clearly erroneous. *United States v. Middleton*, 10 M.J. 123, 133 (C.M.A.1981) and cases cited. Premised on that standard, we find the military judge ruled correctly.

### Individual Defense Counsel

■ Our attention is invited to the defense claim that the appellant was improperly denied an individual military counsel. We are satisfied that the military judge correctly ruled that no attorney-client relationship had been established with the judge advocate in question and that the individually requested defense counsel was unavailable. *United States v. Gnibus*, 21 M.J. 1, 7 (C.M.A.1985); *United States v. Wallace*, 14 M.J. 1019, 1022 (A.C.M.R. 1982). *See also United States v. Perry*, 14 M.J. 856, 859 (A.C.M.R.1982). In addition, our review of the record convinces us that the accused received a vigorous, robust de-

fense. *See generally United States v. Kelly,* 16 M.J. 244, 248 (C.M.A.1983).

### Testimony by Appellant's Commander

■ Finally, Sergeant Murphy argues that the judge erred in permitting her commander to testify in regard to rehabilitation. Two separate matters worthy of analysis arose during the testimony of the appellant's squadron commander. First, the commander was asked, "Would you like to have Staff Sergeant Murphy ... to come back to work for you in the squadron?" The commander responded in the negative. Second, the commander specified that the reason for his negative answer was:

A.... because of my [sic] animosity.

Q. Animosity in the squadron?

A. Yes, sir.

Based on this testimony, we first assess whether a commander properly may indicate under *United States v. Ohrt,* 28 M.J. 301 (C.M.A.1989), whether he wants the individual to come back *into his squadron.* We find this a permissible observation. Here, the commander opined that he didn't want Sergeant Murphy back in his unit; this is substantially different from an impermissible recommendation that she should not be returned to duty anyplace in the Air Force. *See United States v. Ohrt,* 28 M.J. at 305.

■ As for the other part of his remarks: As we read it, the comment about "animosity" did not violate the caution of *United States v. Horner,* 22 M.J. 294 (C.M. A.1986); that the commander must base his assessment upon this appellant's character and potential, not simply upon the severity of the offense. Reading this commander's remarks, we are convinced that he was not displaying some sort of ineradicable personal "animosity" against the appellant. To the contrary, he was simply noting that Sergeant Murphy had blotted her copybook badly in the unit so that others now felt such "animosity" towards her. Because of this, he did not want her returned to duty with his unit. We find such testimony proper. *See United States v. Beno,* 24 M.J. 771 (A.F.C.M.R.1987).

### Order of Witnesses

■ Our review of this case surfaced another intriguing issue. During the trial, Doctor John Whiting, a defense expert or consultant—the record is unclear as to his precise status—was permitted to sit at the defense table during the testimony of the government's expert as to drug procedures at Brooks Air Force Base, Texas. After this testimony, the prosecution sought to call Doctor Whiting to the stand as its own witness over vigorous defense objections. The military judge granted the prosecution request.

In a very recent case, the Court of Military Appeals has explained the correct procedures with experts in the two categories of *potential witness* and *consultant. See United States v. Turner,* 28 M.J. 487 (C.M. A.1989). The Court found there that although the prosecution erred in interviewing the defense consultant, there was no reversible error. In the instant case, we cannot tell from the record before us into which of the two categories Dr. Whiting fell. If he was a witness, trial counsel could properly have interviewed him. *See United States v. Turner,* 28 M.J. at 489, n. 3. Yet if he was a consultant, trial counsel could not speak with him without defense approval. *Id.* at 488–489.

To be completely fair to the appellant, we will view Doctor Whiting as a consultant—this places him in the most favorable category for the appellant. In light of *Turner* and the numerous cases cited therein, we find no error prejudicial to the rights of the accused. Furthermore, we have carefully reviewed the testimony of Dr. Whiting and have assured ourselves that there was nothing contained in it which would not have come out in the ordinary course of the court-martial. Accordingly, we find nothing here which provides a basis for vacating the appellant's conviction.

■ Yet even if Doctor Whiting is seen as a witness who would eventually take the stand for the defense, we view as highly irregular the unorthodox approach of a "preemptive strike" by the prosecutor in calling the witness to the stand before the

defense has its own chance to present him. The prosecution claimed its purpose was simply to interview Dr. Whiting under oath. Though we impute no bad faith to the prosecutor, it strikes us that he thereby conceded that he did not know what he might discover. We surmise that a good objection would lie in terms of relevancy and ineffective use of courtroom time. *See* Mil.R.Evid. 611 and Saltzburg, Schinasi & Schlueter, *Military Rules of Evidence Manual* 556–561 (2d ed. 1986) and cases cited. *See also* Mil.R.Evid. 706 and Saltzburg & Redden, *Federal Rules of Evidence Manual* (4th ed. 1986) 709. Finally, there are Constitutional dangers in interfering with the defense team's decision making process. *See United States v. Turner*, 28 M.J. at 489 and *Lange v. Young*, 869 F.2d 1008 (7th Cir.1989). Accordingly, we suggest that military judges disallow such a "grandstanding" departure from the ordinary and orderly presentation of defense expert witnesses unless there is a clear, convincing need for such innovation.

### Sentence Appropriateness

■ We note the members sentenced the appellant to a bad conduct discharge, two years of confinement, and a reduction to the lowest enlisted grade. We have carefully considered the numerous matters raised by Sergeant Murphy in extenuation and mitigation both at trial and in post-trial submissions, including the fact that two court members have recommended clemency. We find appropriate only so much of the sentence as extends to a bad conduct discharge, confinement for 15 months, and reduction to airman basic.

We have carefully reviewed the record of trial. The findings of guilty and the sentence, as modified, are correct in law and fact. The findings of guilty and the sentence, as modified, are

AFFIRMED.

Judge BLOMMERS concurs.

Senior Judge LEWIS
(concurring/dissenting in part):

I have considerable reservation about the manner in which the issue concerning Tanya Brooks' testimony was handled. I concur in the way the majority has disposed of the issue because I believe it to be consistent with the Court of Military Appeals' guidance in *Trimper*. How we feel about non-disclosure of evidence in Government custody will be guided by how we characterize the underlying issue. In this case, as in *Trimper*, we can take some comfort from the fact that the appellant through her apparently untruthful testimony on the merits set her own trap and cannot now be heard to complain of prejudice. However, there is another way of viewing this situation. The Government, through its nondisclosure, has deprived the appellant of the effective assistance and advice of counsel. Our system contemplates that the defense will be made aware of those evidentiary cards held by the prosecution which it might reasonably expect to play during the course of trial. When material information is withheld, the defense attorney simply cannot provide adequate advice on the often critical matter of whether an accused should testify on the merits or forego that opportunity in the face of almost certain devastating impeachment or rebuttal. Once an accused has committed to a course of action destined to brand him or her as a liar before the triers of fact, all the continuances in the world are not going to provide any relief.

While I agree that apparent perjury should not be rewarded, I would prefer that we craft a rule which would more strongly reinforce full disclosure. I believe that vigorous enforcement of such rule would discourage perjured testimony, which, in my view, is preferable to exposing it after the fact. Our trial advocates understand their responsibility for attempting to prevent it before the fact. I am certain they will police this aspect of our practice to the utmost of their ability.

I would not reduce the sentence imposed by the members in this case. A short time ago I would have joined the majority in this respect in light of the fact that the appellant stands convicted of a one time use of cocaine and has presented truly impressive mitigation. The times are changing. Trial

counsel have spent a good portion of the past decade urging members in drug-related cases to "send a message." This era has about receded into history. Those who have failed to heed the message can expect to face a new reality. I suggest that this case may represent one of this Court's final acts of grace in a cocaine abuse case for some time to come.