**UNITED STATES, Appellee,**

v.

**Sergeant Fletcher L. KING, Jr., 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, United States Army, Appellant.**

**ACMR 9000228.**

U.S. Army Court of Military Review.

11 March 1991.

For Appellant: Captain W. Renn Gade, JAGC, Captain Holly K. Desmarais, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC, Captain Jonathan F. Potter, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial consisting of officer and enlisted members of two specifications of indecent acts with a child under sixteen, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982). The convening authority approved a sentence of a dishonorable discharge, confinement for four years and forfeiture of all pay.

Appellant alleges three errors made by the military judge: (1) permitting an expert witness to testify concerning the credibility of the child victim; (2) permitting an expert witness to testify involving matters beyond her expertise; and, (3) denying a motion for mistrial after learning that trial counsel had improperly obtained confidential information from a defense representative. We hold that the military judge did not err.

### I. Facts

On the merits and again during presentencing, the government called Dr. Sherrouse as an expert witness in child abuse. She testified that she owned the Montessori Children's House in the local community, had testified extensively as an expert in child abuse, had a doctorate in education with emphasis on learning disabilities, and had two masters degrees in education and school psychology. She specialized in diagnostic activities for children. On the strength of these credentials, she was qualified as an expert without defense objection.

On the merits, Dr. Sherrouse testified, *inter alia:*

Q: Ma'am, what does the—literature in your profession suggest about whether children of the age five are capable of fabricating any or all of this?

A: Basically, the literature—

CDC: I object to that, Your Honor. Opinion as to whether or not the witness is being truthful, that's a question for the jury.

TC: Your honor, we're speaking in general terms of whether the witness—whether the literature suggests a propensity for general witnesses making this up and this—in this age group of five.

MJ: The objection is overruled. You may proceed.

Q: Ma'am, again, do five year olds make this up?

A: No, they do not. They lack the sophistication to describe, anatomically correct [sic], the parts of the body; they have had no experience, we hope, with issues such as ejaculation; they would not know about the issues surrounding sexual activity unless they had been involved in a concrete way. So they don't have abstract ability that it would take to make up a story and then also make up events to match it. If I can use an example, a child could not say, he hurted [sic] my tail, which is a real common outcry with a child, and then, four hour [sic] later or six hours later, scream when you put them in the bathtub or cry when they use the bathroom because it burns when they urinate. They don't have the ability to match those two things and say, a ha, I've got to pull this story together. See, they just can't do that.

Q: At what age do children normally form that opinion—or, that ability?

A: You—again, the literature would say you'd have to have at least a twelve year old intellectual level to begin to abstract out and think through and pull a story together that was that fanciful and understand that you've got to have physical characteristics that match activities. It would just—you could have a teenager lie about this because they were angry about curfews or—hated the stepfather, but not a five year old.

TC: Nothing further, Your Honor.

During presentencing, Dr. Sherrouse testified that the appellant was a regressive pedophile and described the typical pattern of conduct for such an individual. She testified that regressive pedophiles were highly likely to continue to abuse children.

The trial defense counsel did not object to this testimony. Instead, he cross-examined Dr. Sherrouse on her qualifications to give such an opinion and her rationale for the opinion. After Dr. Sherrouse completed her testimony, the defense counsel, claiming surprise, asked for a continuance to have his client "... examined by a psychiatrist, somebody who knows what they are talking about, in view of this supposed diagnosis by this witness." The trial counsel agreed to arrange for a psychiatric examination to explore the possibility that the appellant was a pedophile. The trial counsel further agreed that the psychiatrist who performed the examination would be part of the defense team. The military judge concluded that the testimony of Dr. Sherrouse was extremely damaging to the defense, and granted a continuance. When no military psychiatrist was readily available, the government secured at its expense the services of Dr. Campbell, a civilian psychologist whose qualifications were acceptable to the defense.

When the trial resumed nine days later, Dr. Campbell strongly disputed Dr. Sherrouse's opinion that the appellant was a pedophile. Dr. Campbell also testified that he had called the trial counsel after the first interview with the appellant and briefly discussed the contents of that interview. When the trial counsel learned that Dr. Campbell was unaware of the appellant's confession, he delivered to the doctor a copy of the confession, the police report and the victim's statement. It was apparent from Dr. Campbell's testimony that the doctor was unclear as to his exact role in the case. Dr. Campbell further testified that he would have eventually asked for background material (such as that provided by the trial counsel) in order to arrive at an opinion about the appellant's psychological makeup.

At the conclusion of Dr. Campbell's testimony, the defense counsel asked for a mistrial because of the trial counsel's communication with a member of the defense team and for his interference with a privileged relationship. After arguments on the motion, the military judge ruled:

> The request for a mistrial is denied. However, if you feel that there has [sic] been acts or impropriety in this case, I would certainly urge you to submit, perhaps, some documentation, it could be a statement from Dr. Campbell, in support of it, and then, certainly [trial counsel] should have an opportunity to respond to that. And if there is considerable substance to it, we can take care of the matter in a post-trial matter [sic] and then it'll all be attached to the record as appellate exhibits.[1]

## II. Analysis

### A. The Expert's Testimony

■■■ Child abuse experts are not permitted to opine as to the credibility or believability of victims or other witnesses. *United States v. Arruza,* 26 M.J. 234 (C.M.A.), *reh'g. denied,* 27 M.J. 321 (C.M.A. 1988), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); *United States v. Petersen,* 24 M.J. 283 (C.M.A. 1987); *United States v. Deland,* 22 M.J. 70 (C.M.A.), *cert. denied,* 479 U.S. 856, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986); *United States v. Cameron,* 21 M.J. 59 (C.M.A. 1985). Although an expert should not be allowed to testify about the truthfulness of a particular child victim's report of sexual abuse, the expert is permitted to testify about a child's ability to separate truth from fantasy or discuss various patterns of

---

1. No post-trial Article 39(a) session was held. There is, however, attached to the record as an appellate exhibit a sworn statement by Dr. Campbell dated 22 January 1990. In the sworn statement Dr. Campbell clarifies his testimony and asserts that he did not disclose confidential information to the government. The doctor apparently wrote the statement following trial and swore to it before the trial counsel. It was apparently in the record at the time the military judge authenticated the record on 7 March 1990 and when the defense counsel examined the record on 8 March 1990. The record is silent as to whether the defense counsel saw, agreed with or objected to this document prior to authentication of the record. Whether this document is properly before this Court need not detain us because we are able to decide this case without reference to the document.

consistency in stories of child sexual abuse victims and compare those patterns with patterns in the victim's story. *United States v. Tolppa*, 25 M.J. 352, 354 (C.M.A. 1987), *citing United States v. Azure*, 801 F.2d 336, 340 (8th Cir.1986).

■ The key question in determining the admissibility of expert testimony is whether it would be helpful to the factfinder in resolving the facts in issue. Manual for Courts-Martial, United States, 1984, [hereinafter MCM, 1984], Military Rules of Evidence 702 [hereinafter Mil.R.Evid.]; *United States v. Gipson*, 24 M.J. 246 (C.M.A.1987); *United States v. Nelson*, 25 M.J. 110 (C.M.A.1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988). The thrust of the rule is to make more expert testimony available to the fact finders than previously. *Gipson*, 24 M.J. at 251. To qualify as an expert under Military Rule of Evidence 702, it is only necessary that the proffered witness have some specialized knowledge as the result of experience or education. *United States v. Mustafa*, 22 M.J. 165 (C.M.A.), *cert. denied*, 479 U.S. 953, 107 S.Ct. 444, 93 L.Ed.2d 392 (1986).

■ We hold that the military judge did not err by permitting Dr. Sherrouse's testimony on the merits and during presentencing. On the merits, she testified generally about a child's ability to fabricate and never testified that the child victim was credible.

■ During presentencing, Dr. Sherrouse's opinion testimony that the appellant was a pedophile was minimally related to her acknowledged expertise in child sexual abuse. However, we hold that the military judge did not abuse his discretion in permitting the testimony. This is so especially in light of defense counsel's failure to enter a timely objection. MCM, 1984, Mil. R.Evid. 103(a)(1). Furthermore, any error was nonprejudicial in view of the defense counsel's cross-examination of Dr. Sherrouse and in light of Dr. Campbell's testimony.

**B. The Motion for Mistrial**

■ Resolution of this issue requires determination of the status of Dr. Campbell. He was either a "defense representative" under Military Rule of Evidence 502, or he was a "court-appointed defense expert witness employed by the government" under provisions of Rule for Courts–Martial 703(d) and Military Rule of Evidence 706.

Military Rule of Evidence 502 discusses the attorney-client privilege and its application to "defense representatives." The rule states in pertinent part:

(a) General Rule of Privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between the client and the client's representative and the lawyer and the lawyer's representative....

(b) Definitions. As used in this rule:

\* \* \* \* \* \*

(3) A "representative" of a lawyer is a person employed by or assigned to assist a lawyer in providing professional legal services.

\* \* \* \* \* \*

(c) Who may claim the privilege. The privilege may be claimed by the client.... The lawyer or the lawyer's representative who received the communication may claim the privilege on behalf of the client. The authority of the lawyer to do so is presumed in the absence of evidence to the contrary.

MCM, 1984, Mil.R.Evid. 502(a)–(c). Rule 502 is somewhat broader than paragraph 151(b)(2) of the Manual for Courts–Martial, United States, 1969 (Rev. ed.), in that it protects information which is obtained by a third party through accident or design when the person claiming the privilege was not aware that a third party had access to the communication. MCM, 1984, Mil.R. Evid. 502(b)(4) analysis at A22–31.

In some instances, a psychiatrist may be part of the "defense team." *See, e.g., United States v. Alvarez*, 519 F.2d 1036 (3rd Cir.1975). Fed.R.Crim.P. 16(b)(1)(B).

Arguably, a psychotherapist, whether a psychiatrist or psychologist, appointed to assist the defense would fall within the privilege afforded by Military Rule of Evidence 502(b)(3). *United States v. Toledo*, 25 M.J. 270, 275 (C.M.A.1987), *cert. denied*, 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988), *aff'd on reh'g.*, 26 M.J. 104 (C.M.A. 1988).

■ Unlike defense representatives, court-appointed experts are not subject to the rules regarding privileged communications. Military Rule of Evidence 706, governing court appointed experts, states:

(a) Appointment and Compensation. The trial counsel, the defense counsel and the court-martial have equal opportunity to obtain expert witnesses under Article 46. The employment and compensation of expert witnesses is governed by R.C.M. 703.

MCM, 1984, Mil.R.Evid. 706(a).

■ Rule for Courts–Martial 703(d) states in pertinent part:

(d) Employment of expert witnesses. When the employment at Government expense of an expert is considered necessary by a party, the party shall, in advance of employment of the expert, and with notice to the opposing party, submit a request to the convening authority to authorize the employment and to fix the compensation for the expert.

MCM, 1984, R.C.M. 703(d). Military Rule of Evidence 706 and Rule for Courts–Martial 703 contain no privilege. *United States v. Turner*, 28 M.J. 487, 489 (C.M.A. 1989); *United States v. Toledo*, 25 M.J. 270, 274 n. 2. A defense expert is subject to pretrial interview by the trial counsel, even if the witness is a physician. *Turner*, 28 M.J. at 489.

We find considerable confusion in the record surrounding the status of Dr. Campbell. The military judge did not resolve this issue.[2] Therefore, we will do so. We find ample evidence of record to establish that Dr. Campbell was a defense representative. The statements of the trial and defense counsel at trial and the statements by the trial counsel to Dr. Campbell demonstrate that the opposing counsel considered Dr. Campbell part of the defense team. We find that the trial counsel's communication with Dr. Campbell concerning the contents of Dr. Campbell's interview of the appellant was improper. MCM, 1984, Mil. R.Evid. 502(b)(3); *Turner*, 28 M.J. at 489. We must therefore determine if the military judge erred in denying the motion for a mistrial.

■ A motion for a mistrial is a drastic remedy that should be granted only when manifestly necessary to preserve the ends of justice. *United States v. Jeanbaptiste*, 5 M.J. 374, 376 (C.M.A.1978). A mistrial may be declared whenever circumstances arise which cast substantial doubt upon the fairness or impartiality of the trial. *United States v. Waldron*, 36 C.M.R. 126, 129 (C.M.A.1966).

We hold that the military judge's denial of the motion for mistrial was correct, for a number of reasons. First, Dr. Campbell testified that he would have eventually asked for the background supplied by the trial counsel. Second, any advantage to the trial counsel from the information disclosed to him by Dr. Campbell was minimal. Finally, we are convinced from our review of the record that there was no bad faith on the part of the trial counsel.

Finally, we hold corrective action short of a mistrial was not required by the military judge or by this court, since we are convinced that the trial counsel's action had no effect on the sentence adjudged.

The error personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982) is without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge WERNER concur.

---

**2.** A specific ruling, such as was made in *United States v. Reinecke*, 31 M.J. 507 (A.F.C.M.R.), *aff'd*, 32 M.J. 63 (C.M.A.1990), would have prevented the ambiguity.