**216**

UNITED STATES, Appellee

v.

Victor L. WILLIAMS, Staff Sergeant
U.S. Air Force, Appellant.

No. 93–0930.
CMR No. 29111.

U.S. Court of Military Appeals.

Argued April 20, 1994.

Decided Sept. 15, 1994.

Certiorari Denied Jan. 9, 1995.

See 115 S.Ct. 737.

For Appellant: *Captain Robert E. Watson* (argued); Colonel Jay L. Cohen (on brief); *Colonel Terry J. Woodhouse* and *Lieutenant Colonel Frank J. Spinner.*

For Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Jeffery T. Infel-*

*ise* and *Major Barnard N. Madsen* (on brief).

## Opinion of the Court

COX, Judge.

Appellant was tried by general court-martial composed of members. Contrary to his pleas, he was convicted of wrongful use of cocaine between October 14 and November 14, 1989, and robbery of a Box Boy convenience store on November 11, 1987, in violation of Articles 112a and 122, Uniform Code of Military Justice, 10 USC §§ 912a and 922, respectively. He was sentenced to a dishonorable discharge, confinement and forfeiture of $225 pay per month for 4 years,[1] and reduction to the lowest enlisted pay grade. The convening authority approved the sentence, and the Court of Military Review affirmed these results in an unpublished opinion dated March 19, 1993.

We granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY UNFAIRLY LIMITING THE SCOPE OF TRIAL DEFENSE COUNSEL'S CROSS–EXAMINATION OF MITCHELL BROWN.

Before trial on the merits, defense counsel requested a session under Article 39(a), UCMJ, 10 USC § 839(a), regarding a motion *in limine* to prevent introduction of evidence of any drug use by appellant on the night of the alleged robbery. While the defense sought to preclude evidence of appellant's possible drug use, it wanted to inquire into the drug use of Mitchell Brown,[2] one of the prosecution's chief witnesses, for the purpose of impeaching his memory on the evening of the robbery. Trial counsel argued that, if questions regarding drug use were to be precluded, they should be precluded as to everyone. The prosecution stated that it would elicit testimony from Mr. Brown that he had been "drinking heavily" on the night in question and that his memory of the events of the evening was "not very clear." Further impeachment of Brown's memory by any drug use, according to the Government, would be cumulative. The military judge's ruling prohibited inquiry into drug use by appellant or Brown.[3]

At a second Article 39(a) session on the issue, the military judge reiterated his former ruling, *citing* Mil.R.Evid. 403, Manual for Courts–Martial, United States, 1984; the probative value of Brown's drug use, according to the military judge, was outweighed by its danger of unfair prejudice.

At trial, Ms. Kikkert testified by stipulation that, on the evening of November 11, she was working at the Box Boy convenience store mopping the floor when Mitchell Brown came in and asked her for change. Ms. Kikkert stepped behind the counter to the cash register. Brown followed her, pulled a knife on her, and demanded the money from the register. She gave him the money, and he ran away.

Mitchell Brown was also called as a witness for the prosecution. On the night in question, he went to a party at Valerie McNeal's house where he met appellant. The two left McNeal's house in appellant's car to go to the Box Boy. Brown intended to go to the Box Boy to rob the store and thought that he and appellant had a "mutual understanding" of their purpose. Brown "believe[d]" appellant "knew" he was "going in there to rob it." According to Brown, appellant waited in his car while Brown went inside to rob the store. Brown returned to appellant's car, but later "jumped out of the car and ran off." Brown was drinking alcoholic beverages "a lot" that night and admitted that his memory was "not very good." On cross-examination, Brown again admitted

---

1. *See United States v. Perry*, 24 MJ 557, 558 (ACMR), *pet. denied*, 24 MJ 444 (1987).

2. Brown had already been convicted of robbery in an Alaskan state court.

3. The military judge granted appellant's motion *in limine,* noting that questions regarding drug use went into an "awfully dangerous area." He apparently sought to secure an even playing field, disallowing introduction of drug use by Brown which, while potentially impeaching his testimony, might reveal uncharged misconduct on appellant's part.

his memory was "fuzzy" and that "some of what" he had testified to was "based on what ... other people" had said about the events of November 11, rather than his own personal knowledge.

While Brown did not remember any specific conversations he had with appellant about the robbery that night, he stated he knew he and appellant "did talk about what" they planned to do. Ms. Kikkert's stipulation, on the other hand, states that appellant told her that he drove Brown to the store and thought Brown was going to the store to get some "booze."

On appeal, appellant argues the only evidence implicating him in the robbery was the testimony of Mitchell Brown, an admitted accomplice, whose testimony is of little probative value. Brown admitted being so drunk he remembered little about the evening of the robbery, deferring to the statements of others as a substitute for his own memory. Appellant asserts the military judge's ruling prohibiting questions concerning Brown's drug use infringed on appellant's right to cross-examine the prosecution's most important witness. He argues such cross-examination was germane to the direct examination of Brown regarding the events of the evening and was related to the witness' ability to accurately remember. Appellant asks this Court to reverse the decision of the Court of Military Review upholding the military judge's ruling.

■■■ Evidence of Brown's drug use on the night in question was certainly relevant to and probative of Brown's ability to accurately remember the events of November 11, 1989. Mil.R.Evid. 401 and 402. Nevertheless, the military judge excluded the evidence as being substantially more prejudicial than probative under Mil.R.Evid. 403, with no explanation as to why. If the military judge's ruling was based on potential prejudice to the Government's witness, he erred. By definition, effective impeachment evidence *should* be prejudicial to a witness. If the judge's ruling was based on potential prejudice to the accused, he erred again. While evidence Brown used drugs on the night of the robbery might have implied he used them

with appellant or otherwise reflected negatively upon appellant, appellant was the proponent of the evidence and waived objection to any adverse inferences from such evidence. The military judge incorrectly applied Mil.R.Evid 403 to exclude evidence of Brown's drug use.

■■■ Turning to appellant's assertion that his right to confront witnesses against him was violated, the Supreme Court has noted that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). "The credibility of a witness can always be attacked by showing that his capacity to observe, remember or narrate is impaired." J. Weinstein, 3 *Weinstein's Evidence* ¶ 607[04] at 607–55 (1981), *quoted* in *United States v. Lindstrom,* 698 F.2d 1154, 1162 n. 6 (11th Cir.1983). Appellant was denied the opportunity to impeach Brown's ability to accurately remember by inquiring into his drug use on the night of the alleged robbery. Appellant's right to confrontation was unduly limited by the military judge's ruling prohibiting such cross-examination. Nevertheless, prejudice is not presumed; this Court must test for harmlessness. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). According to then-Justice Rehnquist:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination oth-

erwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).

Considering the factors articulated in *Van Arsdall,* we note Brown was the key prosecution witness in showing that appellant was a participant in the robbery of the Box Boy. There was no corroborating or contradictory evidence regarding appellant's understanding with Brown. However, Brown conceded that his memory of the night in question was poor; he admitted to being intoxicated and recalled little of what transpired that evening. Arguably, testimony that Brown could not accurately recall what happened because he was using drugs would be cumulative, as the fact that Brown's memory was extremely poor was uncontroverted. Moreover, appellant was able to conduct effective cross-examination without use of the excluded evidence.

 If, based on the entire record, the reviewing court can say that any Constitutional error was harmless beyond a reasonable doubt, an otherwise valid conviction should not be set aside. *Delaware v. Van Arsdall, supra* at 681, 106 S.Ct. at 1436, *citing Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In light of the record of trial in its entirety, we consider appellant to have been his own worst enemy. He gave several different accounts of the evening to police. On the night of the robbery, appellant gave one story, denying he had a passenger in his car, but when questioned about the man the police had seen, he claimed to have picked up a hitchhiker. The next day, he repeated the hitchhiker story, and the following day he admitted giving "Mitch" a ride to the Box Boy from Ms. McNeal's house. Appellant also contacted Ms. McNeal after he was specifically instructed by the police not to do so. Given appellant's inculpatory conduct, the Court of Military Review concluded appellant's "conviction ... scarcely hinged upon Brown's ... credibility...." Unpub. op. at 4.

While appellant's right to confrontation was somewhat limited by the military judge's ruling, given the facts and circumstances of this case, we are convinced any error was harmless beyond a reasonable doubt. Accordingly, there has been no reversible violation of the Confrontation Clause. *Delaware v. Van Arsdall, supra* at 680, 106 S.Ct. at 1435–36.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.