UNITED STATES, Appellee

v.

Randy L. ADAMS, Corporal U.S.
Marine Corps, Appellant.

No. 95–0618.
Crim.App. No. 94–0951.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 31, 1996.

Decided July 30, 1996.·

For Appellant: *Lieutenant Commander
Eric C. Price,* JAGC, USN (argued).

For Appellee: *Lieutenant Kevin L. Flynn,*
JAGC, USNR (argued); *Colonel Charles
Wm. Dorman,* USMC and *Commander D.H.
Myers,* JAGC, USN (on brief); *Colonel J.
Composto,* USMC.

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of offi-
cer members at Twentynine Palms, Califor-
nia, convicted appellant, contrary to his
pleas, of forgery (31 specifications), wrongful
possession and use of an Armed Forces iden-
tification card, and stealing mail matter, in
violation of Articles 123 and 134, Uniform
Code of Military Justice, 10 USC §§ 923 and
934, respectively. The approved sentence
provides for a dishonorable discharge, con-
finement for 6 years, total forfeitures, and
reduction to the lowest enlisted grade. The
Court of Criminal Appeals affirmed in an
unpublished opinion.

We granted review of the following issue:

WHETHER THE LOWER COURT
ERRED BY HOLDING THAT THE
MILITARY JUDGE'S ERROR IN
OVERRULING DEFENSE COUNSEL'S
OBJECTION BASED UPON IMPROP-
ER CROSS–EXAMINATION AND AR-
GUMENT WAS HARMLESS BEYOND
A REASONABLE DOUBT.

Appellant stole another Marine's personal
checks from the mailroom, forged 31 of those
checks, obtained an Armed Forces identifica-
tion card in the name of that same Marine,
and used the identification card to cash the
stolen checks at various locations. A hand-
writing expert from the Naval Investigative
Service (NIS) testified· that appellant had
made all 31 checks. A fingerprint expert
testified that appellant's fingerprints were on
4 of the 31 checks.

Defense counsel requested and received
the assistance of two handwriting experts,
one from the Secret Service and the other, a

civilian. Neither defense expert testified at trial.

At trial appellant denied committing the offenses. He testified that the government handwriting expert was mistaken. He conceded that the fingerprints on the checks were his, but explained that he had handled some of the checks while being interviewed by the NIS and that he "could have" handled them in the mail room if the parcel had arrived open in the mailroom.

During cross-examination of appellant, trial counsel was permitted to ask, over defense objection: "[Y]our experts have looked at these documents [as well as the government expert], haven't they?" Appellant ultimately responded, "Yes, sir." Then trial counsel asked: "And you're still saying that you didn't write these checks?" Appellant replied: "Did I[sic] not write those checks." During trial counsel's closing argument on findings, he said, "And [appellant] also told you that two experts examined the documents for him, and you didn't see them in court today, did you? You didn't see the defense bringing them forth to tell you Adams didn't write those checks." The military judge responded to defense counsel's objection by telling the members:

> Well, the members will recall what the evidence was in that regard; there was some cross-examination of the accused relating to that, to examination. I don't know that the testimony was that there were two other experts that reviewed the checks; I think there was just the testimony that other experts had, without naming numbers. But again, the members should recollect what the evidence was in that regard.

■ Appellant now asserts that the military judge committed constitutional error by allowing trial counsel to invade the attorney-client privilege and shift the burden of proof. Final Brief at 4. The Government concedes that the military judge erred but argues that the error was nonconstitutional in nature and was harmless. Answer to Final Brief at 4–5.

■ The only issue before us is the test for prejudice. If the errors were of a constitutional dimension, the test is whether the

reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt." *United States v. Bins*, 43 MJ 79, 86 (1995), *quoting Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (other citations omitted). *See United States v. Williams*, 40 MJ 216, 219 (CMA 1994), *citing Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986), *cert. denied* in *Williams*, —— U.S. ——, 115 S.Ct. 737, 130 L.Ed.2d 639 (1995); *see generally* 2 S. Childress & M. Davis, *Federal Standards of Review* § 7.03A (2d ed. 1992) (Constitutional Harmless Error Analysis). The test for nonconstitutional error is whether the error had a substantial influence on the findings. *Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946). *See United States v. Barnes*, 8 MJ 115 (CMA 1979); *see generally Federal Standards of Review supra* § 7.03C (Statutory Harmlessness for Nonconstitutional Errors).

The Court of Criminal Appeals agreed with the Government's concession and held that trial counsel's cross-examination and argument were both improper, but that "the error created by the trial counsel's overzealousness was harmless beyond a reasonable doubt." Unpub. op. at 2, 4. The court below reviewed the error under the standard for nonconstitutional error as well as constitutional error, following our methodology in *United States v. Turner*, 28 MJ 487 (CMA 1989). After observing that "[t]his two-step analysis, frankly, is little more than an academic exercise" because of the Government's overwhelming evidence, the court below found no reversible error under either standard. Unpub. op. at 2.

The Court of Criminal Appeals considered the following evidence in their two-step analysis of the error:

1. The government handwriting expert testified that appellant wrote the victim's name on the 31 forged checks.

2. "[S]omeone representing himself to be" the victim applied for "a new identification card" on December 10, 1991, "to replace a lost identification card."

3. The identification card application was not signed by the victim, and it lists height and weight similar to appellant's.

4. Six of appellant's fingerprints were on four of the forged checks.

5. In his handwriting exemplars, appellant misspelled "dollars" as "dollers." The same misspelling appears in 11 of the forged checks.

6. An identification card application form with the victim's last name on the first line was found in appellant's residence.

7. Appellant was in charge of his unit mail room, which frequently received mail for other units, including the victim's.

8. Appellant testified that his fingerprints might have been placed on the checks during his interview on February 26, 1992, by a NIS agent; but the NIS agent testified in rebuttal that he did not have any of the checks until he got some of them on March 4, 1992, and the rest several months later.

9. Another brig inmate testified that "appellant approached him" in January 1992, "discussed a method for negotiating forged checks," and gave him an identification card application form.

Unpub. op. at 3–4.

As the court below and we in *Turner* said: "Whatever test is applied, the error was not prejudicial to this appellant." 28 MJ at 490 n. 5. Accordingly, we need not decide whether the court below applied the correct test for prejudice.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Judges SULLIVAN and CRAWFORD and Senior Judge EVERETT concur.

COX, Chief Judge (concurring):

Although I concur, the majority opinion does not discuss Article 59(a), Uniform Code of Military Justice, 10 USC § 859(a), which establishes a statutory test for harmless error under the UCMJ. That Article states:

(a) A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.

Over the years, I have come to believe that it is difficult, if not impossible, to draw a meaningful distinction between "harmless beyond a reasonable doubt" and "materially prejudices the substantial rights." I remain open to be convinced that there is a difference. Nevertheless, I agree these errors were harmless by any standard.

It is interesting to note that appellate judges, including myself, when affirming, tend to find no error beyond a reasonable doubt. When reversing, we tend to find error that materially prejudiced a substantial right of the accused. Thus, the myth that there must be some difference between the two standards is perpetuated.