**UNITED STATES, Appellee,**

v.

**Jerry D. MOOLICK, Aviation Electronics Technician Second Class, U.S. Navy, Appellant.**

No. 99–0301.
Crim.App. No. 97–0521.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 19, 2000.

Decided July 14, 2000.

GIERKE, J., delivered the opinion of the Court, in which CRAWFORD, C.J., EFFRON, J., and EVERETT, S.J., joined. SULLIVAN, J., filed an opinion concurring in part and dissenting in part.

For Appellant: *Lieutenant Omar R. Lopez,* JAGC, USNR (argued).

For Appellee: *Lieutenant James E. Grimes*, JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, JAGC, USN (on brief).

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of rape and unlawful entry, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 1 year, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed in an unpublished opinion.

This Court granted review to determine if the military judge erred by ruling that appellant's exclamation, uttered immediately after being accused of rape, was not admissible as an excited utterance.[1] For the reasons set out below, we reverse.

## Facts

Appellant met Storekeeper Seaman Recruit SC when she arrived in the unit and checked into the barracks. SC and another female sailor, KS, went to an on-base club on the night of April 5, 1996. At the club, both KS and SC became intoxicated. SC was so intoxicated that she could not remember how she got back to the barracks.

Appellant asked Airman (AN) Michael Gray to take SC home. According to AN Gray, appellant asked him "not to take advantage of her and to take care of her, that she was married and she was too drunk." AN Gray testified that SC had difficulty walking without assistance and was unable to put her key in the door. AN Gray unlocked the door for her, and she went to bed. AN Gray sat down on the bed next to her, and they began talking. AN Gray testified that SC asked him to spend the night with her, but he did not want to. Because he was "fixing to leave," he hugged SC and they kissed "a little bit." AN Gray then used the bathroom adjoining SC's room. When AN Gray returned, SC had removed her clothes and was lying under the covers on her bed. She again asked AN Gray to spend the night. He declined and left.

SC testified that she did not remember AN Gray taking her home. She admitted that she invited AN Gray to spend the night with her. She testified that the next thing that she remembered was seeing appellant's face on top of hers. She pushed him off, and he did not resist. She ran into KS's room and screamed at her, asking KS if she was "part if it." She told KS that appellant had raped her.

Appellant returned to KS's room about 30 seconds later. According to KS, when appellant heard SC accuse him of rape, "he was shocked and he was upset or whatever you want to call that." KS testified that the situation in the room was "chaos." KS testified that SC was talking to both her and appellant, and appellant was responding. Appellant appeared "shocked, [in] disbelief, upset." KS testified that appellant responded to the accusation by saying, "You grabbed me first." Then he threw up his hands, said "call the cops," and walked out of the room.

SC testified that she did not know if appellant penetrated her. She was taken to the base hospital for a rape examination. No semen was found. The emergency room physician found some redness near her vagina, but "nothing specific for trauma in the general redness that [he] observed."

---

1. The granted issues in this case are:

*Issue I*

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED BY APPLYING THE WRONG STANDARD FOR FACTUAL SUFFICIENCY OF THE EVIDENCE IN AFFIRMING APPELLANT'S CONVICTION.

*Issue II*

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED IN AFFIRMING THE MILITARY JUDGE'S RULING EXCLUDING THE INTRODUCTION OF AN EXCITED UTTERANCE BY APPELLANT. The Government concedes error with respect to Issue I in light of this Court's decision in *United States v. Martinez*, 50 MJ 344 (1998) (summary disposition). Issue I is rendered moot by our disposition of Issue II.

Appellant was interviewed by agents of the Naval Criminal Investigative Service (NCIS) and denied raping SC. He stated that he returned to the barracks after the club closed and found KS downstairs, heavily intoxicated, vomiting, and being helped by the Officer of the Day and other people. Appellant told the NCIS that he and some other sailors assisted KS to her room, put her in bed, and decided to "put a kind of watch on her for three hours to make sure she was ok." Appellant sat in a chair near the bathroom door. He heard coughing noises from SC's room, which adjoined the common bathroom. He went into SC's room "to see if she was ok." He saw her lying on her back, wearing only a bra and bikini panties. He went to the bed to roll her onto her side or stomach in case she vomited. She put her arms around his upper body, called him by his first name, "Jerry," and said "don't leave."

Appellant said that he lay down beside her, fully clothed, and dozed off. He was awakened when SC grabbed his genitals from the outside of his pants. SC then removed her panties. Appellant undressed and began to have intercourse with her. She asked, "Jerry, are you protected?" and he said that he was not. At that point, according to appellant, SC "freaked out." She put on sweat pants and a sweatshirt and ran out of the room. She ran up and down the hall, cursing appellant. SC then returned to her room, and appellant returned to KS's room. SC came into KS's room, accused KS of lying, and accused appellant of rape.

Appellant did not testify, but relied on his statement to the NCIS to present his account of the incident. Over the objection of the prosecution, the military judge admitted appellant's statement "call the cops" as indicative of the absence of a guilty state of mind, but he excluded the statement "you grabbed me first." The defense case-in-chief included evidence of appellant's good reputation and character, and expert testimony disputing the degree of SC's intoxication.

In an affidavit, appellant's former division officer stated that appellant is honest, direct, and straightforward. Two female sailors and one female member of the Air Force testified that appellant is truthful, peaceful, and very respectful to women. A senior chief petty officer testified that appellant is truthful and peaceful. A master chief petty officer testified that appellant is a peaceful person.

### Discussion

Mil.R.Evid. 803(2), Manual for Courts–Martial, United States (1995 ed.),[2] provides that an "excited utterance" is not excluded by the hearsay rule, even if the declarant is available to testify. An "excited utterance" is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

In *United States v. Jones*, 30 MJ 127, 129 (CMA 1990), this Court explained the basis for admitting excited utterances: "The implicit premise is that a person who reacts 'to a startling event or condition' while 'under the stress of excitement caused' thereby will speak truthfully because of a lack of opportunity to fabricate." In *United States v. Chandler*, 39 MJ 119, 123 (CMA 1994), this Court explained: "The guarantee of trustworthiness of an excited utterance is that the statement was made while the declarant was still in a state of nervous excitement caused by a startling event." A statement made during the heat of an argument can qualify as an excited utterance. *See United States v. Satterfield*, 572 F.2d 687, 693 (9th Cir.1978); *see also Martinez v. McCaughtry*, 951 F.2d 130 (7th Cir.1991) (threats by codefendant during fight with victim admissible as excited utterances).

A military judge's ruling admitting or excluding evidence is reviewed for abuse of discretion. *United States v. Hyder*, 47 MJ 46, 48 (1997). We hold that the military judge abused his discretion in this case. The uncontradicted evidence is that SC burst into KS's room, screaming accusations, that SC and appellant had an exchange of words in which she accused appellant of raping her, that he was upset and agitated, that the atmosphere in the room was "chaos," and that he responded immediately with a coun-

2. This rule is unchanged in the 1998 Manual.

teraccusation: "You grabbed me." The startling event was not the earlier sexual encounter, but SC's accusation of rape, to which appellant responded almost immediately.

If a military judge commits constitutional error by depriving an accused of his right to present a defense, the test on appellate review is whether our Court is satisfied beyond a reasonable doubt that the error was harmless. *See United States v. Adams*, 44 MJ 251, 252 (1996). The test for nonconstitutional error is "whether the error itself had substantial influence" on the findings. *United States v. Armstrong*, 53 MJ 76, 81 (2000); *United States v. Adams, supra*; *United States v. Pollard*, 38 MJ 41, 52 (CMA 1993), quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Unless we are persuaded that a nonconstitutional error did not have substantial influence on the findings, or if we are in "grave doubt, the conviction cannot stand." *Id.*; *see United States v. Lawal*, 736 F.2d 5, 9–10 (2d Cir.1984) (using nonconstitutional standard for error in excluding defense evidence).

We evaluate prejudice from the military judge's erroneous evidentiary ruling by weighing (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question. *United States v. Weeks*, 20 MJ 22, 25 (CMA 1985); *see also United States v. Kerr*, 51 MJ 401, 405 (1999); *United States v. Menge*, 48 MJ 490, 492 (1998).

Applying this four-part analysis, we hold that the error materially prejudiced appellant's substantial rights. *See* Art. 59(a), UCMJ, 10 USC § 859(a). Comparing the strength of the Government's case and the defense case, we conclude that neither was significantly stronger than the other. The Government relied solely on SC's accusation. There were no corroborating witnesses and no physical evidence of rape. SC admitted that she asked AN Gray to spend the night with her. The defense case rested on the truthfulness of appellant's statement to NCIS.

The excluded evidence was highly material. The prosecution characterized appellant's statement to the NCIS as a fabrication. The military judge's erroneous ruling deprived appellant of strong evidence that his statement to the NCIS was truthful. The portion of the declaration admitted by the military judge, "call the cops," could have been construed as either exculpatory, the equivalent of "I have nothing to hide," or inculpatory, because it fell short of denying SC's accusation. On the other hand, appellant's unambiguous counteraccusation that SC instigated the sexual contact was clearly exculpatory and bolstered his statement to the NCIS that the sexual encounter was consensual.

The quality of the evidence was high. There was no dispute that appellant accused SC of instigating the encounter. Mil.R.Evid. 803(2) recognizes that an excited utterance is made under circumstances where fabrication is unlikely. Appellant's excited utterance would have bolstered his assertion that SC was the instigator.

Having applied the *Weeks* analysis, we are in "grave doubt." Thus, we need not decide if the military judge's error was of constitutional dimension, because the Government did not meet its burden under the less demanding test for nonconstitutional error. *See O'Neal v. McAninch*, 513 U.S. 432, 437–38, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Accordingly, we must reverse.

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is reversed. The findings of guilty and the sentence are set aside. A rehearing is authorized.

SULLIVAN, Judge (concurring in part and dissenting in part):

On Issue I (that the court below used "the wrong standard for factual sufficiency of the evidence in affirming appellant's conviction"), I would accept the Government's concession of error. The Government concession on Issue I was that the lower court erred, and this case should be remanded by our Court to the lower court to follow *United States v.*

*Martinez*, 50 MJ 344 (1998)(summary disposition).

On Issue II, involving the exclusion of an excited utterance by the military judge, I agree with the majority that testing for "material prejudice to substantial rights" requires analysis of the impact of the error on the outcome of the case. *See United States v. Armstrong*, 53 MJ 76, 82 (2000) (Sullivan, J., dissenting). Nevertheless, I disagree with the majority analysis of the record in this case and would hold that the judge's error was harmless. Article 59(a), Uniform Code of Military Justice, 10 USC § 859(a). This was not constitutional error. Appellant's defense, based on the victim's consent, was adequately presented to the members through the admission of his pretrial statement to military criminal investigators. *See United States v. Scheffer*, 523 U.S. 303, 317, 118 S.Ct. 1261, 1269, 140 L.Ed.2d 413 (1998) (significant impairment standard for constitutional violation). While nonconstitutional error occurred in this case under Mil. R. Evid. 803(2), I am persuaded that such error did not substantially impact the findings of guilty in this case. *See United States v. Adams*, 44 MJ 251, 252 (1996).

This was a contested rape case. The victim's testimony accusing appellant of rape was pitted against his written pretrial statement (Prosecution Exhibit 2) asserting consent, evidence of good military character, and an attack on the credibility of the alleged victim's testimony. The excluded testimony that appellant said "you grabbed me first" to the victim after she accused him of rape immediately after the alleged incident is cumulative evidence already before the court (his written account of the incident given to military investigators later that same day). Moreover, comparing the written pretrial statement of appellant and Airman Sullivan's testimony (R. at 133, 139), there was no possibility in this case that the members could find appellant was admitting the truth of the alleged victim's allegation when he threw up his hands and said "call the cops." Finally, the fact that the victim may have grabbed appellant first is no defense to a rape charge, and such a statement by appellant might even be construed as an implicit admission by him that her accusation was true. Accordingly, I find that if the judge erred in excluding appellant's statement "you grabbed me first," the error was harmless.

In summary, I accept the Government's concession and I would remand this case to the Court of Criminal Appeals in accordance with *United States v. Martinez, supra.*