CRAWFORD, Judge
(dissenting):
I respectfully dissent from (1) the extensive rulemaking by the majority, and (2) the majority’s failure to analyze the harmless error rule in the context of this case. Article 59(a), Uniform Code of Military Justice, (UCMJ), 10 U.S.C. § 859(a) (2000). I agree with Judge Learned Hand that “[i]t would be strange indeed to conclude that this cautionary instruction violates the very constitutional provision it is intended to protect.” Lakeside v. Oregon, 435 U.S. 333, 339, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978).
Dissatisfied with Military Rule of Evidence (M.R.E.) 301(g), the majority today amends that rule. Among today’s innovations to M.R.E. 301(g) are: (1) a new “presumption of prejudice” for violations of the rule, (2) a *361 requirement that military judges identify “case-specific” interests of justice — other than “the generalized fear that the panel” would hold the appellant’s silence against him; (3) a special test, borrowed by “analogy” to M.R.E. 403, balancing these interests of justice with “the defense election;” and (4) an elaborate tripartite standard of review, including a new “middle ground” that applies when condition (2) above is satisfied, but (3) is not. Seldom has this Court engaged in so much rulemaking in a single case.

Background

The Supreme Court has described the “constitutional foundation” underlying the Fifth Amendment privilege against self-incrimination as:
[T]the respect a government — state or federal — must accord to the dignity and integrity of its citizens. To maintain a “fair state-individual balance,” to require the government “to shoulder the entire load,” ... to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth.
Miranda v. Arizona, 384 U.S. 436, 460, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (citation omitted).
In the military justice system, Article 31, UCMJ, 10 U.S.C. § 831, serves the same purpose: Congress intended that article “to secure to persons subject to the Code the same rights secured to those of the civilian community under the Fifth Amendment to the Constitution of the United States -no more and no less.” United States v. Armstrong, 9 M.J. 374, 380 (C.M.A.1980) (citing United States v. Eggers, 3 C.M.A. 191, 195, 11 C.M.R. 191, 195 (1953)).
To the extent the Fifth Amendment and Article 31 are given effect by M.R.E. 301(g), the “primary purposes” of the right against self-incrimination are: “[1] to shield the individual’s thought processes from Government inquiry and [2] to permit an individual to refuse to create evidence to be used against him.”
Manual for Courts-Martial, United States (2002 ed.) (MCM), Analysis of the Military Rules of Evidence A22-5 [hereinafter Drafter’s Analysis].
Clearly, this case does not present such threats as were envisioned by the drafters of the Fifth Amendment or the Military Rules of Evidence. The Government has not sought by any expedient to compel Appel-lee/Cross-Appellant’s (Appellee’s) testimony, nor in any sense required him to create inculpatory evidence.[1] On the contrary, the military judge with obvious deliberation determined that it was necessary to instruct the panel (albeit against Appellee’s wishes) in order to safeguard his constitutional rights. Where a judge gives a correct instruction, upon determining that the interests of justice so require, it is error to find prejudice.
Furthermore, because the Manual for Courts-Martial nowhere requires military judges to jump through the hoops erected by the majority’s opinion, I would resolve this case by looking to the plain wording of M.R.E. 301(g) and the test for prejudice in Article 59(a).

Constitutional Concerns

Appellant’s allegation of constitutional error is correctly resolved by reference to Lakeside. In that decision, the Supreme Court sided with the federal courts that had “generally held that giving the protective instruction over the defendant’s objection is not a constitutional violation.” Id. at 336 n. 3, 98 S.Ct. 1091. While Lakeside expressly addressed only the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel, I agree with the Court of Criminal Appeals (CCA) that the court implicitly rejected any due process argument by declining to address it. United *362 States v. Forbes, 59 M.J. 934, 940-41 (N.M.Ct.Crim.App.2004).
Without the looming threat of constitutional error, the states have been free to adopt different approaches to the present issue. Notably, the Supreme Judicial Court of Massachusetts recently joined what it concluded was a trend towards allowing judges to give the instruction over a defendant’s objection: “ ‘Most courts ... [view] the giving of such an instruction over objection as not prejudicial error.’ Our [prior contrary] rule is one that has been soundly criticized ... and ‘carries the doctrine of self-incrimination to an absurdity.’ ” Commonwealth v. Rivera, 441 Mass. 358, 805 N.E.2d 942, 952-53 (2004) (citations omitted) (emphasis added). Evocative of the Drafter’s Analysis of Rule 301(g), the Rivera court held, “judges should not give the instruction when asked not to do so. We are merely saying that it is [no longer] per se reversible error to do so.” Id. at 953 n. 9

Military Rule of Evidence 301(g)

Like the individual states, the military system has its own rule. Ours was prescribed by the President in the Manual for Courts-Martial, and establishes both the affirmative duty and discretionary authority of trial judges to instruct on an accused’s right not to testify. Specifically, before a military judge may instruct over a defense objection, M.R.E. 301(g) requires either (1) a necessity “in the interests of justice,” or (2) a “most unusual” case. Drafter’s Analysis at A22-7. Against these bare requirements, the CCA’s ornamentation of the rule — of which the majority is so enamored — puts us in the shoes of legislators and is unfaithful to its text. The text of Rule 301(g) (i.e., the pre-Forbes version appearing in the MCM) provides:
When the accused does not testify at trial, defense counsel may request that the members of the court be instructed to disregard that fact and not to draw any adverse inference from it. Defense counsel may request that the members not be so instructed. Defense counsel’s election shall be binding upon the military judge except that the military judge may give the instruction when the instruction is necessary in the interests of justice.
M.R.E. 301(g) (emphasis added). The Drafter’s Analysis notes:
[C]ounsel for the defense may determine that this very instruction may emphasize the accused’s silence, creating a prejudicial effect. Although the Supreme Court has held that it is not unconstitutional for a judge to instruct a jury over the objection of the accused to disregard the accused’s silence, it has also stated: “It may be wise for a trial judge not to give such a cautionary instruction over a defendant’s objection.” Rule 301(g) recognizes that the decision to ask for a cautionary instruction is one of great tactical importance for the defense and generally leaves that decision solely within the hands of the defense. Although the military judge may give the instruction when it is necessary in the interests of justice, the intent of the Committee is to leave the decision in the hands of the defense in all but the most unusual cases.
Drafter’s Analysis at A22-7. (citations omitted) (emphasis added).

Case-Specific Interests of Justice

Plainly (and I must therefore assume deliberately) absent from the text of M.R.E. 301(g) and the Drafter’s Analysis is the majority’s new requirement that a military judge make “ease-specific” factual findings on the record. Until such a requirement is placed in M.R.E. 301(g) by someone with the authority to do so, it has no place in an opinion of this Court. Indeed, when the President has desired to impose such a requirement, he has done so expressly. For example, Rule for Courts-Martial (R.C.M.) 905(d), M.R.E. 304(d)(4), M.R.E. 311(d)(4), and M.R.E. 321(f) each provides, “Where factual issues are involved in determining a motion, the military judge shall state the essential findings on the record.” With those rules, a failure to make factual findings is error, not because this Court wishes it so, but because the rules make it so. In the present case, the military judge satisfied M.R.E. 301(g) by twice stating on the record *363 that he thought the instruction on Appellee’s silence was “necessary.”
MJ: I feel that it is necessary to give [the instruction] unless the defense has case law to cite for the proposition that I shouldn’t give it even though the defense objects.
ADC: You feel it’s necessary?
MJ: I do feel it’s necessary____ I just
think it’s important to tell the members that so they don’t go back and ask the question about why the accused didn’t testify. That’s my thought — and also instruct them that they are not to hold that against the accused in any way.
This is all M.R.E. 301(g) requires, and it is not for this Court to second-guess the circumstances of trial, or the apparent necessity of a cautionary instruction.
Indeed, the majority’s ex-post facto rule-making on this point affects an end run around the longstanding principle that military judges — not appellate courts — are better placed to perceive and respond to the exigencies of trial. See, e.g., United States v. Ovando-Moran, 48 M.J. 300, 304 (C.A.A.F.1998) (“The military judge was in the best position to evaluate [the member’s] responses [during voir dire] and determine whether he was capable of following the judge’s instructions.”). Here, Appellee faced very serious charges of rape, sodomy, adultery, and obstruction of justice (“sexual misconduct” in the view of the majority) in connection with three young female recruits who were less than half his age. That the military judge was concerned that prejudice would result from Appellee’s decision not to testify is clear on the record. The military judge’s hesitancy about not giving the instruction (he recessed twice before ruling) was palpable, and evinces a thoughtful decision. I am not prepared to substitute my judgment for that of the trial judge.
Apart from lacking a legitimate basis in the rule, the majority’s requirement for “case specific interests of justice” draws an untenable distinction between what I understand to be “generalized” interests of justice (i.e., interests rooted in the “standard” fear “that the members would hold the appellant’s silence against him,”) and specialized or “unusual” interests of justice (presumably rooted in some other brand of fear). The majority regards interests of the second sort as more legitimate and more deserving of a fail-to-testify instruction. United States v. Forbes, 61 M.J. at 358-59. This distinction, however, fails to perceive what I think the military judge perceived: that the circumstances of Appellee’s trial required an effective defense strategy or, that failing, the protective vigilance of a trial judge. I assume the trial judge was aware that this Court has not been reluctant to impose a duty on military judges to ensure the protection of individual rights. United States v. Collins, 60 M.J. 261 (C.A.A.F.2004) (when the only member to a sanity board convened under R.C.M. 706 appears to change his mind, the military judge abuses his discretion in not ordering any further inquiry into the accused’s mental responsibility); United States v. Grigoruk, 52 MJ. 312 (C.A.A.F.2000) (Obligation placed on trial judge. When the defense fails to call Dr. Underwager, an approved defense expert, the military judge must make an inquiry on the record or an inquiry must be ordered through a hearing under United States v. Dubay, 17 C.M.A. 147, 37 C.M.R. 411 (1967)); United States v. Clark, 49 M.J. 98 (C.A.A.F.1998) (holding that there was error by the defense in failing to call reconstruction expert who had previously been hired by the defense).

Harmless Nonconstitutional Error

Assuming, arguendo, that giving the cautionary instruction was somehow error, this case, in any event, would present only “a violation of a Manual provision promulgated by the President to ensure a military accused a fair trial.” United States v. Rush, 54 M.J. 313, 315 (C.A.A.F.2001) (employing Article 59(a) after failing to find constitutional error). Thus, Appellee can succeed only by demonstrating that the error substantially influenced the findings, or if this Court is otherwise “left in grave doubt” as to his convictions. See, e.g., United States v. Armstrong, 53 M.J. 76, 81 (C.A.A.F.2000) (citing Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); United *364 States v. Adams, 44 M.J. 251, 252 (C.A.A.F.1996)).[2]
Article 59(a) applies to all nonconstitutional errors, notwithstanding the majority’s exemption by fiat for “defense-friendly” rules. 61 M.J. at 359. Regardless of whether the CCA’s new test for prejudice is “well-reasoned,” it has no basis in the MCM, and the majority errs in adopting it today. Employing the appropriate test for prejudice, the record in this case satisfies me that the conviction below may stand.[3]
Particularly detrimental to Appellee’s allegations of prejudice are the members’ prior exposure in voir dire to the instruction later complained of, and the strength of the Government’s case. Against the backdrop of the comprehensive reasonable doubt instructions given at the end of the trial, Appellee has not established any material prejudice to his substantial rights.

Voir Dire Instruction

The cautionary instruction, as given at the end of trial, was not novel to the members’ ears, but mirrored a prior instruction given to them during voir dire.[4] The instruction complained of reads as follows:
The accused has an absolute right to remain silent. You will not draw any inference adverse to the accused by the fact that he did not testify as a witness. The fact that the accused has not testified must be disregarded by you.
During voir dire, and without objection from the defense, the military judge had earlier alerted the members:
You may expect or desire the accused to testify. The accused has an absolute right not to testify. The fact that an accused may elect not to testify in his own behalf may not be considered adverse to the accused in any way .... Is there any court member who cannot follow this instruction?
The military judge recorded a negative response from all members. Thus, where the members indicated they could follow the law as given to them by the military judge, I find no reason to conclude otherwise. See United States v. Thompkins, 58 M.J. 43, 47 (C.A.A.F.2003) (“absent evidence to the contrary, court members are presumed to comply with the military judge’s instructions.”); Lakeside, 435 U.S. at 340 n. 10-11, 98 S.Ct. 1091 (characterizing as “dubious,” “doubtful,” and “speculative” the suggestion that a jury would disregard such an inference instruction); United States v. Youngblood, 47 M.J. 338 (C.A.A.F.1997) (military panels are often called “blue ribbon” panels due to the quality of the members). The risk that second instruction prejudicially “emphasized” Appel-lee’s silence is therefore inconsequential.[5]

The Strength of Government’s Case

The final indicium of harmlessness in this ease is the strength of the evidence against Appellee. Four complaining witnesses— each about half Appellee’s age — testified against him. Two witnesses providing strikingly similar testimony about Appellant’s mo-dus operandi of driving to remote areas with female Navy recruits before assaulting them.[6] The defense case was weak by comparison: Appellant’s strategy at trial was *365 limited to impeaching the credibility of the alleged victims, whose testimony otherwise went unchallenged. In light of the imbalance on the merits, any error by the military judge was unlikely to have substantially influenced the findings, and was therefore harmless under Article 59(a).

Conclusion

While I agree with Judge Learned Hand that when an accused asserts his privilege against self-incrimination, it may sometimes be “better ... for the trial judge to say nothing about it,” I likewise agree with Judge Hand that, “to say that when he does, it is error, carries the doctrine of self-incrimination to an absurdity.” 435 U.S. at 341 n. 12, 98 S.Ct. 1091 (quoting Becher v. United States, 5 F.2d 45, 49 (2d Cir.1924)). For these reasons, I respectfully dissent.

. Nor is it reasonable to conclude that the prospect of a cautionary instruction would itself "compel” an accused to self-incriminate at trial. See Bordenkircher v. Hayes, 434 U.S. 357, 363-65, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (in pursuing plea bargain, prosecutor did not exceed constitutional bounds), Miranda, 384 U.S. at 460, 86 S.Ct. 1602.

. See also Rivera, 805 N.E.2d at 953 ("If the instruction is given over defendant’s objection, a liberal harmless error rule would still seem warranted.”) (citing Green, The Failure to Testify Instruction, 14 Willamette L.J. 43, 52 (1977)).

. The CCA went outside Article 59(a) to find prejudice below. After determining M.R.E. 301(g) to be "a defense-friendly rule,” the CCA presumed prejudice to the defendant, and required the Government to prove otherwise by a preponderance of the evidence. Forbes, 59 M.J. at 941. The Navy-Marine Court’s self-described "new test for prejudice,” of which the CCA acknowledges the Government “was not aware,” represents a departure from our standard analysis under Article 59(a), and is itself error. Id.

. Voir dire occurred on August 17, 1998. The instructions were read to the members on August 22, 1989.

. See Ovando-Moran, 48 M.J. at 302-04. There, a member indicated during voir dire that he would regard the accused's silence at trial to he "unnatural.” When, in response to further questioning, the member responded that he would not draw any adverse inference from the accused’s silence, the military judge denied a defense challenge for cause. This Court affirmed.

. See Testimony of CF (R. 519-26); Testimony of JB (R. 738-60).