**UNITED STATES**

v.

**David L. DOUGAL, 519 72 4688, Mess Management Specialist Second Class (E–5), U.S. Navy.**

**NMCM 89 4308.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 12 Oct. 1989.

Decided 28 Feb. 1991.

LT Mary A. Razim, JAGC, USNR, Appellate Defense Counsel.

LCDR J. Richard Chema, JAGC, USN, Appellate Government Counsel.

Before ALBERTSON, Senior Judge, and LANDEN and LAWRENCE, JJ.

PER CURIAM:

Contrary to his pleas, the appellant was found guilty by a military judge sitting alone as a general court-martial of one specification each of signing a false official record, stealing $10,118.00 from the U.S. government and making a false claim, in violation of Articles 107, 121 and 132 of the Uniform Code of Military Justice (UCMJ) and 10 U.S.C. §§ 907, 921 and 932, respectively. He was sentenced to confinement at hard labor for 18 months, forfeiture of all pay and allowances, reduction to pay grade E–1 and a bad conduct discharge. The convening authority approved the sentence as adjudged.

The appellant assigns the following two issues as error:

I. APPELLANT DID NOT HAVE ACTUAL KNOWLEDGE OF HIS DIVORCE WHEN HE ALLEGEDLY COMMITTED THE CHARGED OFFENSES.

II. THE APPROVED SENTENCE IS INAPPROPRIATELY SEVERE UNDER THE CIRCUMSTANCES OF THIS CASE.

Before discussing those issues, we will first address the military judge's ruling on a motion made by the defense to dismiss Charge I, the Additional Charge and their specifications on the grounds they were multiplicious for findings purposes with Charge II and the specification therein.

The charges and specifications at issue in appellant's case are as follows:

Charge I: Violation of the Uniform Code of Justice, Article 107.

Specification 2: In that Mess Management Specialist Second Class David Lee Dougal, U.S. Navy, USS Ray (SSN 653), on active duty, did, on board USS Ray (SSN 653), on or about 26 July 1988, with intent to deceive, sign an official record, to wit: NAVPERS 1070/602 (Rev. 7–72), Dependency Application/Record of Emergency Data, which record was false in that Pamela B. Huzai Dougal was not his wife and was then known by the said Mess Management Specialist Second Class David Lee Dougal, U.S. Navy, to be so false.

Charge II: Violation of the Uniform Code of Military Justice, Article 121.

Specification: In that Mess Management Specialist Second Class David Lee Dougal, U.S. Navy, USS Ray (SSN 653), on active duty, did at diverse locations, on diverse dates between 28 June 1986 and 31 December 1988 steal U.S. currency of a value of $11,215.38, the property of the U.S. Navy.

Additional Charge: Violation of the Uniform Code of Military Justice, Article 132

Specification: In that Mess Management Specialist Second Class David Lee Dougal, U.S. Navy, USS Ray (SSN 653), on active duty, for the purpose of obtaining the payment of a claim against the United States in the amount of $318.60 per month, did, on board USS Ray (SSN 653),

on or about 4 February 1987, make and use a certain writing, to wit: a Dependency Application/Record of Emergency Data, NAVPERS 1070/602(5)(c), which said writing, as he, the said Mess Management Specialist Second Class David Lee Dougal, U.S. Navy, then knew, contained a statement that one Pamela B. Huzai Dougal was the wife of the said Mess Management Specialist Second Class David Lee Dougal, U.S. Navy, which statement was false in that he and the said Pamela B. Huzai Dougal had previously been divorced, and was then known by the said Mess Management Specialist Second Class David Lee Dougal to be false.

Defense counsel argued at trial that the false entries on the Dependency Application/Emergency Data Form (NAVPERS FORM 1070/602) [hereinafter Page Two] were the means by which the larceny occurred, and that these acts were fairly embraced in the larceny charge. The Government argued that the larceny occurred twice each month when appellant received his BAQ pay, which made the larcenies separate acts from the other charges.

■ The military judge found that the larceny charge was not multiplicious with the other charges, and only dismissed Specification 2 of Charge I as being multiplicious with the Additional Charge. The military judge based his decision on this Court's ruling in *United States v. Meace*, 20 M.J. 972 (N.M.C.M.R.1984), where the Court held that wrongful appropriation through the use of a false official statement created two separate violations that were not multiplicious for findings. The Court reached this result through a strict application of the criteria announced in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Because the two offenses were not lesser included offenses of each other, were statutorily separate, had different elements, and were aimed at different societal norms, this Court held they were separate offenses for findings purposes. *Meace*, 20 M.J. at 973.

The language of the Court's opinion in *Meace* is clear. The Court at that time believed that the multiplicity criteria announced by the Court of Military Appeals in *United States v. Baker*, 14 M.J. 361 (C.M.A.1983), was no longer applicable following the President's promulgation of Rules for Courts–Martial 307(c)(4), 907(b)(3) and 1003(c)(1)(C) in the Manual for Courts–Martial (MCM), United States, 1984. But, this was an erroneous conclusion. The *Baker* criteria have not been overruled and are still part of the multiplicity analysis. *See United States v. Jones*, 23 M.J. 301 (C.M.A.1987). Where evidence shows that one offense is a lesser included offense of another charged offense, one of the charges must be dismissed. *See Baker*, 14 M.J. at 367. If two offenses arise from one transaction, one offense may be a lesser included offense of the other where the offenses have different elements but the elements of one are fairly embraced in the factual allegations of the other offense and established by the evidence at trial. *Id.* at 368.

The language of the specifications in this case shows that what appellant was charged with submitting false dependency information in order to obtain additional pay and repeating the process to keep the dependent pay coming. When the factual circumstances surrounding a false claim constitute the basis for both false claim and larceny charges, the charges are multiplicious for findings purposes. *United States v. Gans*, 23 M.J. 540 (A.F.C.M.R. 1986); *United States v. Groves*, 19 M.J. 804 (A.F.C.M.R.1985), *rev'd on other grounds*, 23 M.J. 374 (C.M.A.1987). Shortly after the *Meace* decision, the Court of Military Appeals also held that larceny and false claim offenses are multiplicious when based on the same circumstances. *United States v. Fullwood*, 21 M.J. 167 (C.M.A. 1985) (summary disposition). Although the area of multiplicity is full of confusion and conflicts, when the false claim alleged is the mechanism by which the larceny is committed the specifications will generally be multiplicious for findings. *United States v. Donegan*, 27 M.J. 576 (A.F.C.M.R. 1988), *pet. denied*, 28 M.J. 81 (C.M.A.1989); *see United States v. Allen*, 16 M.J. 395 (C.M.A.1983).

■ The specifications in the present case are similar to those in *Donegan* in that the appellant is accused of making a false claim for a certain amount of money and stealing that certain amount of money. The false claim specification alleges a monthly amount, while the larceny specification alleges a total dollar amount for the period of time the appellant was receiving the monthly dependency payments. The facts produced at trial clearly establish that the false claim and what was charged as a false statement in Charge I were the mechanisms used by the accused to obtain the money alleged to have been stolen in Charge II.

The Government is allowed to charge in the alternative for contingencies of proof, *United States v. Giusti*, 22 M.J. 733 (C.G. C.M.R.1986), but there are no contingencies in this case. Proving the larceny would necessarily include proof of the false claim and false statement that allowed appellant to unlawfully obtain the property of the United States. In order to prove the unlawfulness and specific intent to steal, the Government would have to prove that appellant deliberately made false statements in order to obtain the extra $318.00 per month. Absent proof of the false claim and false statement specifications, the appellant would be able to say he honestly thought he was entitled to the stolen money and had no criminal intent. Likewise, proving the false claim and false statement specifications would necessarily establish a larceny by proving that the appellant deliberately lied on the forms to intentionally and wrongfully obtain the property of the United States. The larceny charge fairly embraces and necessarily includes elements from the false claim and false statement charges. *See Baker*, 14 M.J. at 367, 368.

At trial, the Government argued that the larceny charge was a separate offense because the larceny was ongoing and recurred every payday when appellant received his check while the other charges were completed when the forms were completed. The false claim charge, however, may also be ongoing. Whenever someone cashes a paycheck that includes a dependency allowance, knowing that the entitlement no longer exists, they have tacitly presented a false claim. Part IV, paragraph 58c(2)(b), MCM. The false claim or false statement that appellant was married and deserved the extra $314.00 a month continued as long as the larceny continued.

This multiplicity problem may be corrected by consolidating the charges. *Donegan*, 27 M.J. at 577; *Groves*, 19 M.J. at 807. We will do so in our decretal paragraph.

■ As to appellant's first assignment of error the key issue in both the larceny and false claim and false statement specifications is what the appellant knew about his marital status when he filled out and certified his Page Two claiming a dependent spouse. Did he know he was divorced or, as he stated, did he really believe he was just legally separated? If appellant truly believed he was married and entitled to the $318.00 per month BAQ payments, he would have no criminal intent to steal. An honest belief that the forms were correct and that he was entitled to the money is a defense to a specific intent crime such as larceny. R.C.M. 916(j), MCM. Knowledge is also an element of both the false statement and false claim specifications. Part IV, paragraphs 31c(5) and 58c(1)(c), MCM. It is not a false claim if the claimant believed the claim was valid or if the misrepresentation in the claim was due to mere negligence or lack of ordinary prudence. Part IV, paragraph 58c(1)(c), MCM. Likewise, an honest belief that the information provided was correct is a defense to a false statement charge. Part IV, paragraph 31c(5), MCM.

Both the intent to steal necessary for a larceny offense and the knowledge of falsity necessary for false claim and false official statement offenses may be proven by circumstantial evidence. Part IV, paragraphs 31c(5) and 46c(1)(f)(ii), MCM. The record provides more than enough testimonial, documentary and circumstantial evidence to support the convictions.

The following evidence support the finding that appellant knew he was divorced when he signed his Page Two form in 1987 and 1988:

* He was aware that his wife had filed legal separation proceedings against him in 1979.
* His ex-wife testified that she told him she was filing for divorce.
* His ex-wife testified that she told him they were divorced in early 1980 when he called offering to pay spousal support.
* He would not say his wife was lying about this phone call in 1980, only that he could not remember her telling him they were divorced.
* From 1980–1989, appellant did not provide any financial support to the woman he supposedly believed was his wife.
* From 1980–1989, appellant never spoke to his "wife" again or tried to check on the legal status of his marriage, even while engaged to another woman.
* When he had the opportunity to speak to his wife's parents, appellant did not ask about his wife's whereabouts or marital status, even after hearing she may have remarried.
* On one occasion, appellant told his division officer that he was divorced before later reverting back to claiming he was merely legally separated.
* Appellant was filing his income taxes as a single person.

The evidence listed above tends to prove that appellant was not ignorant or mistaken about his marital status. Any possible ignorance or mistake on appellant's part would also not be a defense to the charges against him because it would have been self-induced, deliberate ignorance. Under some circumstances, deliberate ignorance of a fact can create the same criminal liability as knowledge of the fact. *United States v. Newman,* 14 M.J. 474 (C.M.A. 1983). This doctrine is most appropriate when the evidence shows an individual purposely avoided learning a fact, was aware there was a high probability the fact existed, and lacked an actual belief in the nonexistence of the fact. *Id.* at 478, citing *United States v. Aulet,* 618 F.2d 182, 190 (2nd Cir.1980).

After being legally separated for more than 7 years and having no contact with his wife, appellant must have been aware that there was a high probability that he was divorced. The evidence listed above indicates that he could not have actually believed he was still married in 1987. There are several facts and circumstances that show appellant deliberately avoided getting information on his marital status.

Appellant went nearly 9 years without checking on his marital status. In 1988, he told his division officer he could probably get his legal separation documents from Portsmouth, N.H. but did not write to obtain these until early 1989. Nobody told appellant to write Portsmouth, N.H. in 1988. He apparently was always aware that he could find the status of his separation at the courthouse in Portsmouth where he knew the separation agreement was filed. Had he asked for his separation papers, he would have received notice of the divorce. Appellant went 9 years without checking on his marital status, even when he was engaged from 1983–86 and supposedly contemplating marriage. If he believed he was still married during that time, he probably would have written to Portsmouth then to check on his marital status. Despite watching his fiancee's work in obtaining her divorce, appellant took no steps to get a divorce himself. Again, if he truly believed he was married, he would have at least contacted a Navy legal assistance attorney to find out how to get divorced so he could marry his fiancee.

A key question in the case is the credibility of the appellant and his wife (or ex-wife). The record clearly establishes that his ex-wife was not a vindictive wife out to get revenge on the husband she divorced. Instead, numerous contradictions appear in the evidence and appellant's testimony that create doubt as to his credibility. In addition to the general skepticism that he would remain legally separated for 9 years without checking on his marital status, especially when he was engaged for three of those years, other questions on his credibility include:

* His claim that he does not remember if his wife told him they were divorced or

not. It seems this is the type of information that a husband would definitely remember or would definitely be able to say he had never heard.

* His claim that he could not get the information on his marital status, when he apparently knew all along that the information was available in Portsmouth, N.H.

* His statement that he would have supported his wife during the 9–year separation if he had known where she was. He apparently did not support her in late 1979 while they were still married, and he closed their joint checking account approximately a year after their divorce when he learned she had been taking money out of it. If he believed they were still married and he wanted to support her, he could have kept putting money in that account for her.

* His claim that he had tried to find his wife over the years but could not track her down. He called her mother around 1981 to tell her about closing the joint bank account. He called her step-mother in 1987 when he was visiting New London but claims he had no way of getting information on his wife in the 7 years prior to this call and the next year after this call. This claim is especially questionable when the testimony shows that the step-mother has never changed residences.

* His statement that within days of hearing his wife was remarried, he called his wife's step-mother and just exchanged brief small talk.

* His act of putting the wrong birth date for his wife and wrong wedding date on his 1987 Page Two. Time may dull some memories, but most people would be able to at least remember what month they were married in.

* His claim that he never saw his wife's parents after the divorce when apparently his in-laws reported having several visits from him.

* His act of putting a Rockville, Maryland address for his wife on his Page Two in 1987 when he repeatedly said he had no idea where she was living at that time. This is a separate false official statement from his marital status.

* His statement that he used this Rockville address for his wife in 1987 because that is where her parents were residing, when he had previously testified that he had gone to the parents' apartment in Rockville in 1981 and found that the parents were no longer living there.

* His statement that until 1987 he thought BAQ was just part of his paycheck for himself and that in his 14 years in the Navy he had never heard anyone talk about BAQ and what it is for and who is supposed to get it.

Appellant's only supporting witness was his ex-fiancee who testified she was seriously considering divorcing her husband to get back together with the appellant. She apparently had a motive to try to keep appellant out of jail.

In reviewing the action of the trial court, we must give due deference to the military judge's determination of the credibility of witnesses and the weight of the evidence provided by witnesses. *United States v. Bright*, 20 M.J. 661 (N.M.C.M.R.1985); Article 66(c), UCMJ, 10 U.S.C. § 866(c). Plenty of evidence exists in the record to support a finding that appellant knew he was divorced in September 1987 and July 1988, or deliberately failed to obtain the correct information on his marital status. There is ample evidence for any trier of fact to have found the appellant guilty of stealing $10,118 from the Government by providing false information on his Page Two forms in an intentional effort to continue receiving BAQ funds he was not entitled to receive. We are also convinced beyond a reasonable doubt that appellant is guilty of the offenses of which he was convicted. *United States v. Turner*, 28 M.J. 487 (C.M.A.1989); Article 66(c), UCMJ.

█ Appellant's second assignment of error is that his sentence of 18 months confinement, total forfeitures, reduction to pay grade E–1 and bad conduct discharge was unduly harsh. Appellant points to his 14 years of service, his high evaluations,

and his efforts to repay the money he was charged with stealing. However, appellant made no effort to repay the money until after an involuntary recoupment had started. He apparently made no effort to return the money in the previous years when he knew he was not entitled to it. Although he received high evaluations, appellant's performance was characterized as unsatisfactory when he was placed in a leadership position after 13 years of service. Due to his position as a former first class petty officer and his many years of experience, appellant was in a position of trust and respect and should have been an example for the junior enlisted men in his command. He betrayed the trust and respect of his command by continuing a long period of dishonest behavior to take advantage of the Navy and steal more than $10,000. He also took advantage of his superiors by allowing them to waste their time and effort looking for information that he could have obtained himself at any time.

Having found Charge I and its Specification and the Additional Charge and its specification multiplicious for findings purposes with Charge II and its specification, we set aside the findings of guilty to Charge I and Specification 2 of Charge I and the Additional Charge and its Specification. We dismiss those charges and specifications. As to Charge II and its Specification, we modify the finding by adding after the words "U.S. Navy" at the end of the specification the words:

> "by obtaining $318.60 per month from the United States by making and using certain writings, to wit: Dependency Application/Record of Emergency Data, NAVPERS 1070/602(5)(c) forms, which said writings, as the said Mess Management Second Class David Lee Dougal then knew, contained statements that one Pamela B. Huzai Dougal was the wife of said Mess Management Specialist Second Class David Lee Dougal, U.S. Navy, which statement was false in that he and the said Pamela B. Huzai Dougal had previously been divorced, and were then known by the said Mess Management Specialist Second Class David Lee Dougal to be false."

We affirm the findings as modified and consolidated. Upon reassessment of the sentence pursuant to the principle announced in *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), we affirm the sentence adjudged and approved below.