# UNITED STATES NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS WASHINGTON, D.C.

Before
**F.D. MITCHELL, J.A. FISCHER, M.K. JAMISON**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**ANTHONY L. EVANS**
**INFORMATION SYSTEMS TECHNICIAN FIRST CLASS (E-6), U.S. NAVY**

NMCCA 201300174
**GENERAL COURT-MARTIAL**

Sentence Adjudged: 18 January 2013.
Military Judge: CAPT Kevin R. O'Neil, JAGC, USN.
Convening Authority: Commander, Navy Region Southwest, San Diego, CA.
Staff Judge Advocate's Recommendation: Commander J.M. Nilsen, JAGC, USN.
For Appellant: LT Gabriel K. Bradley, JAGC, USN.
For Appellee: LT Ian D. MacLean, JAGC, USN.

**26 June 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

FISCHER, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of possession of child pornography in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The members sentenced the appellant to eighteen months confinement and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged.

The appellant raises the following four assignments of error (AOE)[1]: (1) that he was denied a speedy trial; (2) that he was unfairly prejudiced when the CA referred charges that were previously withdrawn for an improper reason; (3) that the military judge erred when he admitted improper aggravation evidence in sentencing; and, (4) that the military judge erred when he directed the members to make special findings.[2]

After carefully considering the record of trial, the submissions of the parties, and oral argument,[3] we are convinced that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to a substantial right of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

**Background**

In October 2010, the Naval Criminal Investigative Service (NCIS) began investigating the appellant after an authorized undercover operation identified the appellant's internet protocol address as having downloaded child pornography. In November 2010, NCIS special agents, acting pursuant to a command authorization and with the appellant's consent, searched the appellant's residence on board U.S. Fleet Activities Sasebo, Japan and seized several items to include a Toshiba laptop computer (Item A), an Acer Aspire desktop computer (Item D) and a Toshiba external hard drive (Item F). In December 2010, NCIS Cyber Agent AT forensically examined the seized media devices and found suspected child pornography on Items A, D, and F. Additionally, in November 2010, NCIS Special Agents JP and CW questioned the appellant regarding his involvement with child pornography and the appellant provided a sworn, written statement in which he admitted to searching for, downloading, and viewing child pornography on his personal computer.

While the investigation was pending, the appellant was involuntarily extended on active duty past his scheduled retirement date in February 2011. In March 2011, the appellant was sent on temporary additional duty orders from his command, USS AVENGER (MCM 1) in Sasebo, Japan, to the Transient Personnel

---

[1] A fifth AOE was withdrawn by the appellant.

[2] AOE 4 is a summary assignment of error.

[3] On 10 April 2014, we heard oral argument on the appellant's first and second AOEs.

2

Unit in San Diego, CA.[4]  On 16 August 2011, the appellant's command preferred a charge of possession of child pornography against him.  An Article 32, UCMJ, investigation was held in October 2011 and on 4 November 2011, Commander, Naval Forces Japan, referred the charge and specification to a general court-martial.  On 21 November 2011, the appellant was arraigned and trial was set to commence in San Diego on 21 February 2012.  In January 2012, the Government, without objection from the defense, requested a continuance until 5 March 2012, which the court granted.

On 26 February 2012, while preparing for trial, the trial counsel had a phone conversation with NCIS Cyber Agent AT during which the trial counsel learned that Cyber Agent AT had earlier completed forensic reports for evidence contained in Items D and F.  The trial counsel was previously unaware of these reports.  At the time, the investigative file had been forwarded from the NCIS office in Sasebo to the San Diego office, so Cyber Agent AT contacted Special Agent EP in San Diego to locate and provide the reports to the trial counsel.  Special Agent EP located what he believed were the requested forensic reports and provided them to the trial counsel, but what he actually provided was a forensic report for Item D and a spreadsheet reflecting the results of a virus scan performed on Item F.  Based on her review of previous forensic reports, the trial counsel believed these reports were missing information and therefore she questioned their accuracy and the forensic analysis done by Cyber Agent AT.  Due to her inexperience, the trial counsel did not understand the reports and erroneously concluded that Cyber Agent AT had committed an error in preparing them.  The trial counsel briefed her senior trial counsel about her concerns and without further clarification from anyone at NCIS, trial counsel contacted the CA's staff judge advocate and recommended that the CA withdraw and dismiss the charge so the evidence could be forensically reanalyzed.  The CA concurred and withdrew and dismissed the charge and specification on 1 March 2012.

NCIS contractor ES conducted a second forensic analysis of the seized media that was completed in May 2012 and an identical charge and specification were re-preferred in June 2012.  As it turned out, there was no infirmity in the Government's forensic evidence.  The trial counsel did not fully understand the forensic evidence compiled by NCIS.  A second Article 32 investigation was conducted and the charge was referred once again to a general court-martial on 24 October 2012.  The

---

[4] Upon the appellant's transfer to San Diego, CA, Region Legal Service Office Southwest in San Diego assumed prosecutorial cognizance over the case.

appellant was arraigned on this charge and specification on 5 November 2012 and the contested trial commenced on 14 January 2013.

Additional facts necessary for the resolution of each AOE are developed below.

**Discussion**

*Improper Withdrawal*

We begin our analysis with the appellant's second assignment of error in which he contends that the post-arraignment withdrawal of the charge on 1 March 2012 and the re-referral of the same charge on 24 October 2012 was improper pursuant to RULE FOR COURTS-MARTIAL 604, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). R.C.M. 604(a) provides that a CA may, for any reason, withdraw charges any time before findings are announced. Under R.C.M. 604(b), charges which have been withdrawn may be referred to another court-martial "unless withdrawal was for an improper reason." In other words, charges may be referred to another court-martial if the withdrawal was for a proper reason. In this context, the Court of Appeals for the Armed Forces has interpreted "proper" to mean "a legitimate command reason that does not 'unfairly' prejudice an accused in light of the particular facts of a case." *United States v. Underwood*, 50 M.J. 271, 276 (C.A.A.F. 1999) (citations omitted). Whether charges are properly withdrawn and referred to another court-martial are matters of law reviewed *de novo*. *United States v. Underwood*, 47 M.J. 805, 809 (A.F.Ct.Crim.App. 1997), *aff'd*, 50 M.J. 271 (C.A.A.F. 1999).

At trial, the military judge concluded "[t]he government did not have good cause, nor a proper reason, for withdrawing and dismissing the prior, identical charge and specification . . . ." Appellate Exhibit LXXXVII at 3. The military judge reasoned:

When the convening authority made the decision to withdraw and dismiss the charge and specification against the accused on 1 March 2012, he was operating under erroneous information. Upon the advice of the detailed trial counsel, he stopped the case from going to trial to afford the Government the opportunity to address the perceived infirmities in the forensic analysis, as the remedy was briefed to him as having the potential to uncover exculpatory evidence. The

4

convening authority's decision was entirely in good faith and based on what he believed to be the need for further investigation to ensure the charge and specification were supported by the evidence. This perceived need for further investigation, even though the primary intent was to ensure the integrity and sufficiency of the Government's evidence prior to re-referral, is a permissible reason to withdraw and dismiss. *United States v. Tippit,* 65 M.J. 69 (C.A.A.F. 2007)

That said, factually the reason did not exist – there was no infirmity in the forensic analysis. [The trial counsel] simply did not fully appreciate the nature and full extent of the forensic evidence compiled by NCIS. The late transfer of evidence from Japan to San Diego, so close to the start of the original trial did not give [trial counsel] enough time to verify and familiarize herself with it. . . . Consequently, when the convening authority made the decision to withdraw and dismiss the charge and specification, the articulated reason did not exist.

Requiring all reports, all evidence, and the appointment of a San Diego NCIS cyber agent liaison upon LT [D] being detailed as trial counsel would likely have prevented the situation the Government found itself in on 29 February 2012. Failure to do so is a reflection of the situational level of competence attributable to the Government's pretrial preparation. Such a failure to appreciate the seriousness of or extent of the charge offense is not a proper reason for withdrawal. *United States v. Mann,* 32 M.J. 883 (N.M.C.M.R. 1991).

*Id.* at 20-21.

As a remedial measure, the military judge prohibited the Government from introducing evidence obtained or derived from evidence Items D and F, reasoning that excluding such evidence placed the Government in the same position it was in when the charge and specification were withdrawn and dismissed on 1 March 2012. Given this remedy, the military judge concluded the appellant was not unfairly prejudiced and therefore the CA was not barred from re-referring the charge and specification. In assessing for prejudice the military judge stated:

5

The accused, through counsel, was complicit in the near seven (7) month delay in bringing the charge and specification back to court. His counsel engaged in extensive plea negotiations on his behalf, took advantage of the second opportunity to explore the Government's case at a UCMJ Article 32 hearing, of which the defense requested additional time to prepare, and despite being aware of the looming issue of whether the convening authority's 1 March 2012 withdrawal and dismissal was for good cause, the accused did not file a motion seeking relief at arraignment, instead opting to request additional time to brief the matter.

While the Government may gain an advantage by having time to gain the appreciation and understanding of all forensic evidence compiled by NCIS, this advantage is easily remedied by this court. The situation on 1 March 2012 was the Government was aware of and prepared to present evidence of suspected CP found on Item A seized from the accused, a personal laptop computer. Applying a remedy that places the Government in that same position, the accused has not lost access to any evidence, he has not lost the ability to call a relevant and necessary witness, nor has he lost the benefit of any prior pretrial ruling of this court. To the contrary, he benefited from a second adversarial pretrial hearing, he will benefit from a second forensic review of Item A by a different Government funded defense expert consultant, and he will receive additional Government funded expert consultation from a forensic psychologist to ensure the assistance is current. The delay from 1 March 2012 to trial caused no prejudice to the accused. Accordingly, no relief is required on this ground. *United States v. Koke*, 32 M.J. 867 (N.M.C.M.R. 1991), *aff'd*, 34 M.J. 313 (C.M.A. 1992).

*Id.* at 23-24.

Assuming without deciding that the military judge was correct in determining the CA withdrew the charge and specification for an improper reason, we agree that this action ultimately did not prejudice the appellant. Our review of the record of trial fails to reveal any indication that the Government was acting in bad faith or was attempting to interfere with the appellant's exercise of any rights. The

6

identical charge and specification were referred to the same level court-martial.  The military judge's remedial measures prevented the Government from offering evidence of additional child pornography found on the appellant's media devices that the Government had not intended to offer at the initial trial. Finally, there is no evidence that the appellant's ability to present an appropriate defense was prejudiced.  We specifically reject the appellant's assertion that he was prejudiced by the Government's ability to further perfect its case against him. The appellant points to no applicable legal authority to support this theory of prejudice and it is not the type referenced by the case law.  *See Underwood* 50 M.J. at 276; *Koke* 34 M.J. at 315; *United States v. Blaylock*, 15 M.J. 190, 195 (C.M.A. 1983).

### *Speedy Trial*

The appellant also asserts that the military judge erred in failing to grant a defense motion to dismiss for denial of his right to a speedy trial, pursuant to the Fifth and Sixth Amendments.  We agree with the military judge that the appellant was not denied his right to a speedy trial.

The United States Constitution guarantees all persons the right to a "speedy and public trial."  U.S. CONST. amend. VI. Additionally, the Due Process Clause of the Fifth Amendment ensures accused servicemembers the right to a speedy trial.  A military judge's conclusion of whether an accused received a speedy trial is a legal question that is reviewed *de novo*. *United States v. Cooper*, 58 M.J. 54, 57 (C.A.A.F. 2003); *United States v. Doty*, 51 M.J. 464, 465 (C.A.A.F. 1999).  "The military judge's findings of fact are given 'substantial deference and will be reversed only for clear error.'"  *Doty*, 51 M.J. at 465 (citation and internal quotation marks omitted).  Having examined the record of trial, including the extensively litigated pretrial motion, we hold that the military judge's thorough findings of fact are fully supported by the record.  AE LXXXVII at 8-18.

In determining whether the speedy trial requirements of the Sixth Amendment are satisfied, we are required to consider: (1) the length of the delay; (2) the reasons for the delay; (3) the assertion of the right to speedy trial; and (4) the existence of prejudice.  *See United States v. Birge*, 52 M.J. 209, 212 (C.A.A.F. 1999) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

7

To calculate the length of delay we must first determine when the appellant's right to a speedy trial under the Sixth Amendment was triggered. We view this as a question of law subject to *de novo* review. Sixth Amendment protections are triggered upon preferral of charges or the imposition of pre-trial restraint. *See United States v. Vogan*, 35 M.J. 32, 33 (C.M.A. 1992). Sixth Amendment protection does not apply to pre-accusation delays where there has been no restraint. *United States v. Marion*, 404 U.S. 307, 313 (1971); *United States v. Reed*, 41 M.J. 449, 451 (C.A.A.F. 1995). We reject the appellant's assertion that his involuntary extension on active duty triggered Sixth Amendment speedy trial protections. *See United States v. Bush*, 49 C.M.R. 97, 99 (N.C.M.R. 1974) (holding that "[l]egal hold does not equate to an arrest or restricted status") (citing *United States v. Clay*, 48 C.M.R. 334 (N.C.M.R. 1973)).

At trial the military judge, without explanation, found the appellant's Sixth Amendment speedy trial right was triggered when the original charge was withdrawn and dismissed on 1 March 2012. AE LXXXVII at 25. Under the unique circumstances of this case, there is support for the position that the appellant's Sixth Amendment speedy trial right was triggered by the initial preferral of the charge on 16 August 2011. Although this charge was withdrawn and dismissed, the identical charge was again re-preferred on 29 June 2012 and the record clearly demonstrates that all parties anticipated the charge would be brought back once a second forensic examination of the evidence was completed. Plea negotiations were conducted and the Government moved forward with plans to schedule an Article 32, UCMJ, hearing during the intervening period between withdrawal and the second preferral. *Id.* at 16. Thus, based on the unique facts of this case, we will presume the period of Government accountability began with the initial preferral date of 16 August 2011, despite the fact that the appellant ultimately went to trial on a charge preferred on 29 June 2012. *See United States v. Grom,* 21 M.J. 53, 56 (C.M.A. 1985) (citing *United States v. Avalos,* 541 F.2d 1100, 1108-09 (5th Cir. 1976)).

*1. Length of the Delay*

The military judge considered the delay at issue to be from 1 March 2012 to the 5 November 2012 arraignment and concluded this factor weighed slightly in favor of the appellant. AE LXXXVII at 25-26. As discussed *supra*, we presume the delay at issue to be from 16 August 2011 to 5 November 2012. Given this nearly sixteen-month delay, we conclude this factor weighs

8

squarely in favor of the appellant and thus, are satisfied that the case merits our balancing of the remaining *Barker* factors.

   *2.  Reasons for the Delay*

   The facts surrounding the time from original preferral on 16 August 2011 until the CA's withdrawal and dismissal on 1 March 2012 are discussed *supra*.  Concerning the delay from 1 March 2012 to 5 November 2012, the military judge stated:

   The Government's actions are not a model of expediency.  Despite being aware of the impending issue on whether the 1 March 2012 withdrawal and dismissal was valid, the Government proceeded in the normal pretrial course in getting the case back to trial.  Content to rest on logistical difficulties perpetuated by a geographical separation, all of its own doing, the Government made no effort to expedite the second pretrial process.

   This delay was compounded by good faith plea negotiations and what this court reasonably infers to be a robust discussion on whether the Government would agree to a conditional plea of any kind.  Once plea negotiations broke down, the requisite Article 32 hearing was scheduled, delayed to accommodate a defense request, and held on 8 September 2012.  Upon completion of the Article 32 report on 17 September 2012, the Government took over a month to refer the charge and specification, again taking no steps to expedite the review process, instead relying on the aforementioned logistical and geographical difficulties of its own doing.

   Despite the defense's vehement objections to what the defense contends amounts to Government indifference regarding the post 1 March 2012 delay, the defense was not prepared to proceed to trial at the 5 November 2012 arraignment.  Rather, the defense asked for a 10 December 2012 trial date.  As the well developed record shows, given the negotiations and posturing that had occurred in the trial *ab initio*, this court lacked confidence the parties would be prepared to go to trial by 10 December 2012.  Given the upcoming holiday season, and the need to afford the parties the flexibility to resolve or alternatively seek court intervention on any new or

9

remaining issues, this court ordered a 14 January 2013 trial date. This delay deemed necessary and prudent by the court, is not attributable to the Government.

AE LXXXVII at 25-26 (footnote omitted).

The military judge concluded this factor weighed slightly in favor of the appellant. Even considering a lengthier period of delay from 16 August 2011 to 5 November 2012, we concur with the military judge's conclusion that this factor slightly favors the appellant. The Article 32, UCMJ, hearing for the original preferred charge was held in early October 2011. The appellant was arraigned on 21 November 2011 and court set 21-24 February 2012 for a contested members trial. The parties mutually agreed to the trial dates. Due to witness availability issues, the Government moved to continue the trial date until 5 March 2012 and the defense did not oppose the Government request. The Government was proceeding toward trial in a reasonable fashion when the TC, in good faith, concluded the charge and specification should be withdrawn and dismissed based on a mistaken evidentiary infirmity. She was supported by her supervising counsel and made the recommendation to the CA. As discussed *supra*, the CA was acting entirely in good faith when he followed that recommendation.

### 3. Demand for Speedy Trial

Through the entire course of the investigation and court-martial of the case from November 2010 until January 2013, the appellant made a single demand for speedy trial on 8 September 2012, following the second Article 32, UCMJ, hearing. The military judge found this "request was primarily, if not totally, tactical, submitted only after plea negotiations broke down and the case was headed back to trial." *Id.* at 27. The military judge found this factor weighed strongly in favor of the Government. We agree.

### 4. Prejudice to the Appellant

As to the fourth factor, the appellant points to no specific prejudice in his ability to present his defense or in his trial defense counsel's ability to prepare. Rather, he contends that Government used the delay "to perfect its case" against him and argues, "[b]ecause of the delay, the Government gained a tactical advantage and was able to bolster the credibility of its forensic testing." Appellant's Brief of 12 Nov 2013 at 18. The Government's ability to prepare or improve

10

its case is not the sort of prejudice contemplated by *Barker's* fourth factor. "That prejudice is concerned with impediments to the ability of the defense to make its own case (*e.g.*, if defense witnesses are made unavailable due to the government's delay); the opportunity for the prosecution to prepare for trial does not, on its own, amount to prejudice to the defense." *United States v. Abad,* 514 F.3d 271 (2d Cir. 2008) (citing *Barker*, 407 U.S. at 532 (considering, as one of several kinds of possible prejudice to the defense, "the inability of a defendant adequately to prepare his case" that might arise "[i]f witnesses die or disappear during a delay," or "if defense witnesses are unable to recall accurately events of the distant past"). Additionally, while the appellant was held on active duty past his expected retirement date, he was never in any form of pretrial restraint, remained in a full pay status, and at all times was afforded the rights and responsibilities of a first class petty officer. AE LXXXVII at 28. Finally, the military judge's remedial measures in prohibiting the Government from introducing additional evidence derived from evidence exploited from Items D and F further convinces us that the appellant was not prejudiced by the delay.

Accordingly, we find no violation of the Sixth Amendment in applying the *Barker* and *Birge* factors.

Turning to the appellant's Fifth Amendment claim regarding pre-preferral delay, we note that to prevail he must demonstrate "egregious or intentional tactical delay and actual prejudice." *United States v. Reed,* 41 M.J. 449, 452 (C.A.A.F. 1995). Here, the appellant has failed to meet either requirement. There has been no showing of egregious delay or bad faith on the Government's part. There is absolutely no evidence of record to suggest that the Government delayed in bringing charges against the appellant to gain some unspecified tactical advantage or to impair the appellant from presenting an effective defense. *See Vogan*, 35 M.J. at 34. Given the complexity and the logistical challenges of this investigation, we do not find the pre-preferral delay to be unduly excessive.

### *Admission of Evidence in Aggravation*

In his third AOE, the appellant alleges the military judge erred in admitting victim impact evidence because it did not directly relate to his offense or, in the alternative, that its probative value was outweighed by the danger of unfair prejudice. During the presentencing proceedings, the trial defense counsel raised a motion *in limine* objecting to the

11

testimony of three case agents intending to offer victim impact evidence.[5]  The military judge denied the motion and noted specific Congressional findings made in connection with 18 U.S.C. § 3509 that the "effect of the dissemination of these videos on the minors depicted in the videos is evidence directly related to or resulting from knowing possession of the videos." Record at 959.  Additionally, the military judge issued the following limiting instruction prior to the witness testimony:

> I expect the Government to present further witness testimony this morning in what we call aggravation.  I gave you preliminary instructions about this at the beginning of the trial.  I expect the testimony will be related to individuals depicted in Videos 1, 2, 3 and 4 of Prosecution Exhibit 27.  I am allowing the Government to present this evidence for a very specific purpose, and that is what effect, if any, the dissemination of those videos, which includes knowing possession of those videos, had on these individuals. The limitation is placed to make sure you understand that you are not to consider any evidence of the actual production of the video or any offenses you believe may have been committed against the individuals depicted at the time the video was made against (the appellant).  I will allow you to hear the evidence.  Its purpose is for its tendency, if any, to show what effects the dissemination of the videos had on the individuals depicted in the videos.  You will not consider the evidence for any other purpose.

*Id.* at 962.  The members all acknowledged and understood the military judge's instruction.  *Id.*

We review a military judge's decision to admit or exclude sentencing evidence for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009).  When the military judge conducts a proper balancing test, the ruling will not be overturned absent a clear abuse of discretion.  *Id*.  The prosecution may present evidence of aggravating circumstances "directly relating to or resulting from the offenses of which the accused has been found guilty" to include "social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused."  R.C.M. 1001(b)(4).  The impact on children who are used in the child pornography business is sufficiently directly

---

[5] The Government proffered that the witnesses would testify as to the impact on the victims from the dissemination of the videos of their abuse.

12

related to the offense of possessing child pornography to assist the sentencing authority. *See United States v. Anderson*, 60 M.J. 548 (A.F.Ct.Crim.App. 2004). The testimony offered by the prosecution addressed that impact, and the military judge thoroughly instructed the members on the proper consideration of this evidence. Under the circumstances of this case, we find no abuse of discretion in admitting the exhibit as relevant aggravating evidence of victim impact.

### Failure to Comment on Legal Error in SJAR

Although not assigned as error, or specified as an issue, the trial defense counsel arguably alleged legal error in his 26 April 2013 request for clemency. In that request he asserted that the appellant's speedy trial rights had been violated and that the original trial had been withdrawn for an improper purpose. It is not entirely clear whether the trial defense counsel was alleging legal error or simply referencing these issues in support of his request that the CA reduce the appellant's confinement to time served.[6] We found no evidence of record that the staff judge advocate (SJA) responded to the defense clemency submission. However, while the SJA is not required to examine the record for legal error, "he must respond to any suggestion of legal error that is raised by the accused and must state whether, in his opinion, corrective action is required." *United States v. Diaz,* 40 M.J. 335, 341 (C.M.A. 1994). In this case we find the clemency submission, at a minimum, suggested legal error and therefore R.C.M. 1106(d)(4) applies.

"R.C.M. 1106(d)(4) requires that 'the staff judge advocate . . . state' in his recommendation 'whether, in' his 'opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted

---

[6] Referencing the appellant's right to a speedy trial, the clemency petition states, "[d]espite being on the eve of his transfer to the Fleet Retired Reserve, having served roughly 20 years of service in the United States Navy, he [the appellant] was placed into a legal hold status while his case was sorted out. He neither could have expected, nor should he or any Sailor have had to endure, what would come next. Due to no fault of his own, the Government's legal process kept him in limbo status, awaiting his fate for the next two years and two months." Clemency petition of 26 Apr 13 at 1. Additionally, the clemency petition alleged the appellant was prejudiced by the delay following the improper withdrawal because the Government was able to perfect its case against him. Despite these assertions, the trial defense counsel did not assert these amounted to legal errors requiring dismissal, and merely asked the CA to reduce the appellant's confinement. At the time of the clemency submission, the appellant had served ninety-nine days of his eighteen months of adjudged confinement.

under R.C.M. 1105 or when otherwise deemed appropriate by the staff judge advocate.'" *United States v. Griffin,* 201300227, 2014 CCA LEXIS 313 at \*9-10 (N.M.Ct.Crim.App. 20 May 2014) (quoting *United States v. Hill*, 27 M.J. 293, 295 (C.M.A. 1988)). "An analysis or rationale for an SJA's statements concerning legal error is not required and a response may merely consist of either a statement of agreement or disagreement with any legal error raised by the appellant. R.C.M. 1106(d)(4)." The Manual contemplates that errors may be raised by the accused for consideration by a CA, even though the recommendation of the SJA has already been served on the accused. *Hill,* 27 M.J. at 295." *Id.* at \*10.

"In most instances, failure of the SJA to prepare a recommendation with the contents required by R.C.M. 1106(d)(4) will be prejudicial and will require remand of the record for preparation of a suitable recommendation for the CA." *Id.* (citing *Hill*, 27 M.J. at 296). However, if the Court of Criminal Appeals is convinced that under the particular circumstances, a properly prepared recommendation would have no effect on the CA, remand to the CA is unnecessary. *Id.* at \*10-11. "Thus, a Court of [Criminal Appeals] is free to affirm when a defense allegation of legal error would not foreseeably have led to a favorable recommendation by the staff judge advocate or to corrective action by the convening authority." *Hill*, 27 M.J. at 297.

In this case, the potential speedy trial and improper withdrawal issues were evident prior to preferral of the charge. The issues were fully litigated at trial and addressed by the military judge in his comprehensive ruling captured in a thirty-three page appellate exhibit. *See* AE LXXXVII. Moreover, we concluded the appellant was not deprived of his Constitutional right to a speedy trial and was not prejudiced by withdrawal of the charge, assuming such withdrawal was improper. In sum, we find the allegations of legal error in the appellant's clemency submission would not foreseeably have led to a favorable recommendation by the SJA or to corrective action by the CA. Therefore, the appellant was not prejudiced by the SJA's failure to submit an addendum or to otherwise comment on the allegations of error. Because the appellant was not prejudiced, returning this court-martial to the CA is not necessary.

### Error in the CA Action

Although not assigned as error, the CA's action contains errata in misidentifying the appellant's plea to the Charge and

Specification as "guilty" where a "not guilty" plea was in fact entered.  We find the appellant was not prejudiced from the error, but is nonetheless entitled to a record that correctly reflects the results of the court-martial proceedings. *See United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998).  We order the necessary corrective action in our decretal paragraph.

## Remaining Assignment of Error

Having carefully reviewed the record and the pleadings, we find the remaining summary assignment of error to be without merit.  *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

## Conclusion

The supplemental court-martial order shall correctly reflect the appellant's plea of not guilty to the Charge and specification.  The findings and the approved sentence are affirmed.

Chief Judge MITCHELL and Judge JAMISON concur.


For the Court



R.H. TROIDL
Clerk of Court

15